# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00406-CV

**Julia Rocha and George Rocha Sr., individually and as representatives for the Estate of George Rocha Jr., Appellants**

**v.**

**Michael Faltys, Pi Kappa Alpha-Alpha Omicron Chapter, and Pi Kappa Alpha International Fraternity, Appellees**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT NO. 00-192-C277, HONORABLE DONALD HUMBLE, JUDGE PRESIDING

Appellants Julia Rocha and George Rocha Sr., individually and as representatives for the Estate of George Rocha Jr. (the Rochas), appeal the trial court's order granting summary judgment in favor of appellees Michael Faltys, Pi Kappa Alpha-Alpha Omicron Chapter (the fraternity), and Pi Kappa Alpha International Fraternity (Pi Kappa Alpha International) (collectively appellees). The Rochas also appeal the trial court's denial of their motion for continuance and the trial court's rulings on their objections to affidavits filed by Faltys, the fraternity, and Pi Kappa Alpha International. We will affirm the judgment.[1]

---

[1] The appellees moved for both no-evidence and traditional summary judgments. *See* Tex. R. Civ. P. 166a(i); Tex. R. Civ. P. 166a. The trial court's judgment did not specify its basis for granting summary judgment. The Rochas on appeal attack the summary judgment on both no-evidence and traditional grounds. As we affirm the grant of the no-evidence summary judgment, we need not reach the traditional summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a tragic accident that occurred on April 26, 1998. At the time of the accident, George Rocha Jr. was a twenty-one-year-old junior at Southwestern University in Georgetown and a member of Pi Kappa Alpha fraternity. On April 25, 1998, George and his friend Faltys (a former suitemate who was also a member of the fraternity) attended a crawfish boil at the fraternity house. George consumed some beer at the crawfish boil, which officially ended at 6:00 p.m.; an informal open house followed for some period of time. Around 2:45 a.m. on April 26, George and Faltys, accompanied by three co-eds from Southwestern, went to a local swimming spot on the San Gabriel River called the "Blue Hole." At the Blue Hole, Faltys and George climbed to the top of some cliffs that overlook the river. Faltys dove into the river from the cliffs and then, according to appellants, encouraged George to do the same. George, who was unable to swim, also jumped from the cliffs but began floundering as soon as he hit the water. Despite the efforts of Faltys and other students to save George, he drowned.

On April 26, 2000, the Rochas filed suit for wrongful death arising out of the alleged negligence of Faltys and both the Southwestern chapter and international association of Pi Kappa Alpha. On December 6, 2000, Faltys filed a no-evidence motion for summary judgment. On December 28, the fraternity and Pi Kappa Alpha International filed no-evidence motions for summary judgment. Rocha responded to appellees' motions and also filed a motion for continuance to engage in additional discovery. The trial court granted all of the summary judgment motions on April 29, 2001 and denied the Rochas' motion for continuance on April 30. The Rochas raise four issues on appeal.

2

**MOTION FOR CONTINUANCE**

*Standard of Review*

We review the grant or denial of a motion for continuance for an abuse of discretion. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986); *Texas Dep't of Human Servs. v. Green*, 855 S.W.2d 136, 147 (Tex. App.—Austin 1993, writ denied). This Court cannot overrule the trial court's decision unless the trial court acted unreasonably or in an arbitrary manner, "without reference to any guiding rules and principles." *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991) (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985)).

The trial court may grant a continuance to a party opposing a motion for summary judgment to permit further discovery if the non-movant can show the need for such discovery to oppose the motion. Tex. R. Civ. P. 166a(g). A motion for continuance seeking time for discovery must be supported by an affidavit that describes the evidence sought, explains its materiality, and shows that the party requesting the continuance has used due diligence to obtain the evidence. Tex. R. Civ. P. 251; Tex. R. Civ. P. 252; *see Hatteberg v. Hatteberg*, 933 S.W.2d 522, 527 (Tex. App.—Houston [1st Dist.] 1994, no writ); *Green*, 855 S.W.2d at 147. The affidavit of diligence must state with particularity what diligence was used; conclusory allegations of diligence are not sufficient. *Gregg v. Cecil*, 844 S.W.2d 851, 853 (Tex. App.—Beaumont 1992, no writ). A party who fails to diligently use the rules of discovery is not entitled to a continuance. *State v. Wood Oil Distrib., Inc.*, 751 S.W.2d 863, 865 (Tex. 1988).

The trial court did not abuse its discretion in denying the Rochas' motion for continuance. The Rochas moved for a continuance on the ground that an affidavit from Daniel Wallace provided "new" evidence that other people, including other fraternity members, were present

3

at the time of the events, contrary to Faltys's contention that only he, George and the three women were at the Blue Hole when the accident occurred.[2] The motion stated that the continuance was sought "to explore this evidence and depose other witnesses." The motion failed to identify the specific evidence that would have been sought had the continuance been granted. Nor does the motion establish or discuss the materiality of the new evidence to the Rochas' claims. This lack of specificity does not comply with the requirements of Rule 252.

Furthermore, the Rochas failed to establish that they used due diligence in pursuing the evidence they sought. Wallace's identity was not unknown to the Rochas' attorney. He was identified in the police report regarding the accident on April 26, 1998. The Rochas' attorney stated that the failure to obtain his testimony earlier in the case was due to difficulty in locating Wallace, who was a college student with a transient lifestyle. The attorney provided an affidavit as evidence of diligence; this affidavit, however, contained only conclusory statements that the Rochas' attorneys had been diligent and that efforts had been made to find Daniel Wallace earlier in the discovery process. The affidavit did not describe the particular efforts that were made. These statements are wholly insufficient to establish due diligence. *See Gregg*, 844 S.W.2d at 853. Moreover, the Rochas' attorney admits that she failed to take extensive discovery because most witnesses seemed to agree as to the basic facts of the case. In sum, the Rochas failed to establish due diligence sufficient to require a continuance. Thus, we hold that the Rochas have not demonstrated that the trial court abused its discretion in denying their motion for a continuance. We overrule their first issue.

### SUMMARY JUDGMENT

---

[2] The trial court admitted the Wallace affidavit into evidence.

4

*Standard of Review*

A no-evidence summary judgment is essentially a pre-trial directed verdict; thus, we apply the same legal sufficiency standard in reviewing the no-evidence summary judgment as we apply in reviewing a directed verdict. *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70 (Tex. App.—Austin 1998, no pet.). The appellate court, then, must determine whether the plaintiff produced any evidence of probative force to raise fact issues on the material questions presented. *Id.* The appellate court must consider all of the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered, and every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Id.*

In their motions for summary judgment, the appellees each asserted that there was no evidence of duty, proximate cause, or negligence, and thus, the Rochas' claims failed as a matter of law. As we agree that none of the defendants owed a duty to George, we do not reach the issues of proximate cause or breach. We will first discuss the claims against Faltys and then those against the local and international fraternities.

**Faltys**

Negligence is a common-law doctrine, consisting of three essential elements: (1) a legal duty owed by one person to another, (2) a breach of that duty, and (3) damages proximately resulting from the breach. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987), *superseded by statute*, Tex. Alco. Bev. Code Ann. §§ 2.01-2.03 (West 1995). To establish liability, a plaintiff must prove the existence and violation of a duty owed to him by the defendant. *Id.* It is fundamental that the existence of a legally cognizable duty is a prerequisite to all tort liability. *Graff v. Beard*, 858

5

S.W.2d 918, 919 (Tex. 1993). The existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). Generally, a person is under no legal duty to control the conduct of another, even if the person has the ability to do so, unless there exists a special relationship between them. *Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 720 (Tex. 1995); *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983).

The Rochas allege that Faltys owed a legal duty to George under two theories: (1) that all persons owe a duty to act reasonably towards others, and (2) that Faltys, by taking George to the Blue Hole and encouraging him to jump, created the situation that led to George's death and thus had a duty to prevent it. Under their first theory, the Rochas cite several cases that they assert stand for the proposition that "the law imposes on all persons a duty to act as a reasonably prudent person would act under same or similar circumstances, considering any reasonably foreseeable risks or probability of injury to others." *See, e.g.*, *Zidell v. Bird*, 692 S.W.2d 550, 553 (Tex. App.—Austin 1985, no writ). In each case cited by the appellants, however, the court found a duty on the part of the defendant; the remaining issue to be decided was the question of breach. *See Great Atl. & Pac. Tea Co. v. Evans*, 175 S.W.2d 249, 250 (Tex. 1943) (involving duty employer owes to employee); *Zidell*, 692 S.W.2d at 553 (involving common-law duty imposed on a party contracting to supply services to perform those services with reasonable care); *Vargas v. City of San Antonio*, 650 S.W.2d 177, 178-79 (Tex. App.—San Antonio 1983, writ dism'd w.o.j.) (involving duty created by city employee's violation of ordinance requiring quarantine of dogs after an attack).

The test framed by the Rochas—how a reasonably prudent person would act under the same or similar circumstances, considering any reasonably foreseeable risks or probability of

injury to others—is the test for determining when a duty has been breached, not the test for whether a duty exists. That test, therefore, is applicable only if Faltys owed a legal duty to George; the Rochas have not pleaded facts that would establish any specific duty on the part of Faltys. Thus, Faltys did not owe a general legal duty to George to act reasonably.

The Rochas next argue that Faltys, by taking George to the top of the cliff and encouraging him to jump off the cliff while he was intoxicated, created a dangerous situation, thus giving rise to a duty to prevent George's death. It is a basic principle of legal responsibility that "individuals should be responsible for their own actions and should not be liable for others' independent misconduct." *Read v. Scott Fetzer Co.*, 990 S.W.2d 732, 739 (Tex. 1998) (Hecht, J., dissenting). However, if a "party negligently creates a situation, then it becomes his duty to do something about it to prevent injury to others if it reasonably appears or should appear to him that others in the exercise of their lawful rights may be injured thereby." *El Chico Corp.*, 732 S.W.2d at 311 (quoting *Buchanan v. Rose*, 159 S.W.2d 109, 110 (1942)).

Faltys's act of taking George to the top of the cliffs, in and of itself, does not give rise to a legal duty. Simply taking George, an adult man, to the location where George could choose to engage in an allegedly dangerous activity does not constitute negligent creation of a dangerous situation. The fact that George was intoxicated does not affect this analysis. It has been long-recognized at common law that an individual who chooses to consume alcohol maintains the ultimate power over his situation and thus the obligation to control his own behavior. *Graff*, 858 S.W.2d at 921-22. To impose a legal duty on Faltys because George had consumed alcohol would be contrary to this principle.

7

The Rochas also allege, however, that Faltys negligently created a dangerous situation by encouraging George to jump from the cliff when he knew George could not swim. None of the parties have identified any Texas case suggesting that an adult encouraging another adult to engage in a dangerous activity can give rise to a legal duty.[3] We are unable to locate any such precedent. Nevertheless, we must look at the particular facts of a case to determine whether a duty exists. *See Phillips*, 801 S.W.2d at 525. In determining whether to impose a duty, the court must balance several interrelated factors. *Golden Spread Council, Inc. v. Akins*, 926 S.W.2d 287, 289 (Tex. 1996). The court "must weigh the risk, foreseeability, and likelihood of injury against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Id*. at 289-90. The court also looks to whether one party had superior knowledge of the risk or a right to control the actor who caused the harm. *Id*. at 290. In holding that Faltys's actions did not create a duty, we do not decide whether encouragement could ever give rise to a duty but only that on these facts a duty did not arise.

The "encouragement" alleged to create a duty in the instant case was implicit encouragement at most. It consisted of Faltys's suggestion to George that they jump off the cliff at the Blue Hole and Faltys's showing George a purportedly safe location on the cliffs from which to jump into the water. However, there is no evidence that Faltys actively encouraged, urged, pressured, forced, or coerced George into jumping from the cliff. Rather, Faltys told George that he did not have to jump if he did not want to; George decided to jump from the cliff. Under these facts we decline to impose a legal duty on Faltys for negligently creating a dangerous situation.

---

[3] Faltys has admitted that jumping from the cliff into the water below was a dangerous activity.

8

The cases cited by the Rochas do not support the imposition of a duty in the instant case. Each case involves defendants who had undertaken much more significant affirmative acts than the ones Faltys is alleged to have undertaken here. In *Venetoulias v. O'Brien*, the court held that a duty arose when the defendant affirmatively promised the plaintiff, prior to her consumption of alcohol, that he would arrange safe transportation to get her home from the bar where they were drinking. 909 S.W.2d 236, 241-42 (Tex. App.—Houston [14th Dist.] 1995, writ dism'd by agr.). The plaintiff relied on this promise and became intoxicated. Instead of driving her home as promised, the defendant put her in her car, placed her keys in the ignition, and left. *Id.* at 240. The court imposed a duty based on the defendant's promise and these affirmative acts. An additional fact that likely affected the analysis was that the defendant was the owner of the bar where the plaintiff had been drinking. *See id.* at 240.

In *Golden Spread Council*, the court held that the defendant, a regional boy scout council, had a duty to the young members of a church boy scout group not to recommend to the group a particular person as a potential scoutmaster if the council knew or should have known the person was particularly likely to molest boys. 926 S.W.2d at 292. The court noted that the council had full knowledge of complaints of the scoutmaster's prior molestation of boys and nonetheless recommended him. *Id.* at 290. In deciding whether to impose a duty, the court also took special note of the strong policy of Texas to protect children from abuse. *Id.* at 291. The implicit encouragement by Faltys in the instant case is not of the nature of the behavior that was found to give rise to a duty in the cited cases. As such, we decline to impose a legal duty on Faltys under these facts. We overrule the second issue on appeal.

9

**The Fraternity**

The Rochas assert that the fraternity owed a legal duty to George under two theories: (1) that the trip to the Blue Hole was a fraternity activity, and as such the fraternity owed a duty to conduct the activity in a reasonably safe manner, and (2) the fraternity's providing alcohol to George gave rise to a duty. The Rochas first argue that there is a fact issue as to whether the trip to the Blue Hole constituted a fraternity activity and thus summary judgment is inappropriate. We disagree. The crawfish boil ended at 6:00 p.m. on April 25. George, Faltys and the three other students did not leave for the Blue Hole until 2:45 a.m. on April 26, more than nine hours after the end of the crawfish boil. The only evidence the Rochas offer in support of this theory is that the people who were at the Blue Hole had also attended the crawfish boil and open house party, and moreover, that some of these people were members of the fraternity.[4] There is no evidence that the trip to the Blue Hole was organized or planned by the fraternity. Simply because a group of individuals who are members of the same social organization go together on a social outing does not make the outing an activity of the organization.

The Rochas also assert that a duty arises from the fact that the fraternity provided beer to George. A social host does not incur a legal duty simply by providing alcohol to an individual. *Reeder v. Daniel*, 61 S.W.3d 359, 364 (Tex. 2001) (refusing to recognize a cause of action against social hosts who make alcohol available to guests under the age of eighteen); *Smith v. Merritt*, 940 S.W.2d 602, 608 (Tex. 1997) (holding that violation of statute making it illegal to provide alcohol to a minor does not support a negligence *per se* cause of action against a social host); *Graff*, 858

---

[4] There is some dispute as to how many people at the Blue Hole had been at the crawfish boil earlier. We believe that this dispute, however, is not material or relevant.

10

S.W.2d at 921-22 (holding that a social host serving alcohol to adult guests does not give rise to a duty); Tex. Alco. Bev. Code Ann. § 2.03 (West 1995) (stating that chapter two of the Alcoholic Beverage Code provides "the exclusive cause of action for providing an alcoholic beverage to a person 18 years of age or older"). Therefore, the fraternity did not owe a legal duty under the common law by providing beer to George.[5]

The Rochas, however, also allege that the fraternity provided beer to George in return for a fee. Providing an alcoholic beverage for a fee can be the basis of a statutory cause of action if the person to whom the alcohol is served was obviously intoxicated to the extent that he presented a clear danger to himself and others, and the intoxication was the proximate cause of the damages suffered. Tex. Alco. Bev. Code Ann. § 2.02(b) (West 1995). However, this cause of action can only be brought against a statutorily defined "provider." *Id.*; *see Merritt*, 940 S.W.2d at 607. A "provider" is a person who sells or serves an alcoholic beverage under authority of a license or permit issued under the Alcoholic Beverage Code or a person "who otherwise sells an alcoholic beverage to an individual." Tex. Alco. Bev. Code Ann. § 2.01(1) (West 1995). In this case, there is no evidence that the fraternity had a permit or license under the code. Furthermore, there is no evidence in the record that the fraternity served beer to George or anyone else at the crawfish boil. If there is no evidence that the fraternity served beer to George, there cannot be any evidence that the fraternity sold beer to George. Thus, we need not address the Rochas' argument that providing alcohol to a dues-paying member of an unincorporated association constitutes a sale under chapter

---

[5] As noted below, there is no evidence in the record to suggest that the Fraternity served beer to George or anyone else at the party. Whether beer was served, however, would not change the analysis as to the existence of a common law duty.

two of the Alcoholic Beverage Code. Therefore, we hold that the fraternity did not owe George a legal duty under the Alcoholic Beverage Code.

**Pi Kappa Alpha International**

The Rochas also assert that Pi Kappa Alpha International owed a legal duty to George because it "negligently created the situation and failed to act reasonably in its actions of providing alcohol and fostering and encouraging a dissolute attitude at the fraternity which caused George Rocha Jr. to drink and lead [sic.] to his death." The Rochas do not identify any evidence in the record that directly or inferentially supports their assertions that Pi Kappa Alpha International provided alcohol or encouraged a dissolute attitude. Thus, we hold that Pi Kappa Alpha International owed no legal duty to George. We overrule the Rochas' third issue.

**HAZING**

The Rochas assert that because there is evidence that George's death was the result of hazing, summary judgment should not have been granted in favor of the appellees. Assuming without deciding that hazing would give rise to a legal duty, the Rochas' claims still fail because there is no evidence in the record to show that what occurred on the night in question was hazing. The Rochas' sole support for their claim of hazing arises from a fraternity definition which states that "hazing" is "any activity that might reasonably be expected to bring physical harm to the individual." This definition is found in Pi Kappa Alpha International's standards regarding treatment of pledges. The Rochas state that because diving from the cliffs at night was dangerous and could cause injury, the events at the Blue Hole constituted hazing.

12

The international fraternity's definition of hazing does not create a legal duty to George. *See Jacobs-Cathey Co. v. Cockrum*, 947 S.W.2d 288, 291-92 (Tex. App.—Waco 1997, writ denied) (holding that company policy to fix certain dangerous conditions caused by others does not create a legal duty to persons who may be injured by the dangerous condition); *Estate of Catlin v. General Motors Corp.*, 936 S.W.2d 447, 451 (Tex. App.—Houston [14th Dist.] 1996, no writ) (holding that a corporation's internal policy regarding alcohol consumption does not create a legal duty to third parties). Moreover, there are policy reasons that weigh against imposing an open-ended duty such as that contained in Pi Kappa Alpha International's standards to refrain from "any activity . . . that might bring physical harm to [an] individual." Such a duty could reasonably extend to much legal, albeit dangerous activity. Moreover, there is no evidence that the activities in question constituted hazing as that term is ordinarily used; George was a member of the fraternity, not a pledge. Thus, we hold that there is no evidence to support a legal duty to George based on hazing and overrule the Rochas' fourth issue.

## OBJECTIONS TO AFFIDAVITS

Finally, the Rochas appeal the trial court's rulings on objections they made regarding portions of certain affidavits filed by appellees in support of their motions for summary judgment. Based on our review of the record, the admission of these statements did not cause the rendition of an improper judgment. Therefore, we do not address the issue of the statements' admissibility. *See* Tex. R. App. P. 44.1(a)(1).

## CONCLUSION

13

The trial court did not abuse its discretion in denying the Rochas' motion for continuance or in overruling their objections to the appellees' summary judgment evidence. When a young man dies at such a young age, one cannot avoid a feeling of sadness. But while the events leading to George's death were tragic and unfortunate, on these facts his friend Faltys did not have a legal duty such that a cause of action for negligence can be maintained, nor did the fraternity or Pi Kappa Alpha International. Therefore, we affirm the trial court's summary judgment.

—

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Powers[*]

Affirmed

Filed:   February 7, 2002

Publish

---

[*]   Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).