# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00251-CV

**Bonnie Carter, Scott Carter, Jennifer Carter, Andrew Draughn, Eleanor Draughn and Susan Draughn, Appellants**

**v.**

**Ramzi Abbyad, Jason Nuckolls, and Travis McLemore, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT NO. D-1-GN-07-000795, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## O P I N I O N

This is an appeal from the dismissal of appellants' negligence suit. Appellants Jennifer Carter and Eleanor Draughn were stabbed at a party by Dustin McManus, a companion of appellees Ramzi Abbyad, Jason Nuckolls, and Travis McLemore. The stabbing victims and their parents—Bonnie Carter, Scott Carter, Andrew Draughn, and Susan Draughn[1]—argue that they have alleged facts that, if proven, would demonstrate that appellees owed them a duty of care to have prevented the drug-addled and threatening McManus from coming into contact with unsuspecting guests at a party that the appellees attended. Appellees contend that the trial court correctly determined that the companions of an individual under the influence of behavior-altering drugs had no duty, based on the circumstances as alleged in this case, to protect others from that

---

[1] This suit was originally brought by the parents on behalf of their then-minor children. The victims have since reached majority and are able to sue on their own behalf.

individual. Guided by case law constraining the recognition of legal duties to control the actions of others, we affirm.

This case was dismissed based on the pleadings. Consequently, the following description of events underlying this case is drawn from appellants' allegations in their petition. While at the home of former codefendant Tyler Hunkin, appellees provided McManus with and/or watched him consume excessive amounts of illegal drugs including marijuana and hallucinogenic mushrooms in celebration of McManus's completion of a probation term. It is alleged that appellees knew that McManus consumed more than three times the "normal dose" of hallucinogenic mushrooms and knew that he had a knife. Appellants also assert that appellees knew that McManus's behavior grew more bizarre, threatening, and unpredictable as time passed, that he was having a "bad trip," and that he was a danger to himself and others. Appellants also allege that appellees were under the influence of illegal drugs and alcohol as well.

Appellants claim that appellees decided to take McManus in this condition to a party on Halloween night to expose him to ridicule for their own amusement. They also allege that appellees did this despite knowing that these circumstances would expose McManus and other partygoers to danger. On the way to the party, appellants stopped at a convenience store to evaluate McManus's increasingly bizarre behavior. According to the petition, he was behaving "insanely" with a wild look in his eyes, was completely incoherent, and lacked the ability to communicate effectively. Nevertheless, appellees went on to the party with McManus.

At the party, McManus's behavior allegedly grew still more bizarre and threatening toward himself and others. Eventually, appellants allege, McManus stabbed Abbyad, after which appellees fled. McManus then stabbed appellants Eleanor Draughn and Jennifer Carter, and others.

Appellants filed an original petition and at least five amended petitions. Appellees filed motions to dismiss and for special exceptions. After appellants repleaded, appellees filed motions to dismiss on the basis that they did not have a legal duty to control McManus. The trial court dismissed the case.

An appellate court reviews a dismissal on the pleadings de novo, taking all allegations, facts, and inferences in the pleadings as true and viewing them in a light most favorable to the pleader. *See Perry v. S.N.*, 973 S.W.2d 301, 303 (Tex. 1998); *San Benito Bank & Trust Co. v. Landair Travels*, 31 S.W.3d 312, 317 (Tex. App.—Corpus Christi 2000, no pet.); *Hall v. Stephenson*, 919 S.W.2d 454, 467 (Tex. App.—Fort Worth 1996, writ denied). The question is whether, assuming plaintiffs can prove all the allegations contained in their petition, a cause of action is recognized under Texas law. *San Benito Bank & Trust Co.*, 31 S.W.3d at 317.

A cause of action for negligence arises when an actor breaches a legal duty and the breach proximately causes damages. *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 246 (Tex. 2008). Texas law generally imposes no duty to control the acts of another person to prevent harm to third parties absent certain special relationships or circumstances. *Providence Health Ctr. v. Dowell*, 262 S.W.3d 324, 331 (Tex. 2008); *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000); *see also* Restatement (Second) of Torts § 315 (1965). Examples of relationships that have been recognized as giving rise to a duty to control include

3

employer/employee, parent/child, and independent contractor/contractee. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). A party who agrees to attempt to help someone else has a duty to provide that help without negligently harming the person in need. *Torrington*, 46 S.W.3d at 837-38; *see also* Restatement (Second) of Torts § 323.[2] A party who negligently creates a dangerous situation has a duty to attempt to prevent injury to others if it reasonably appears or should appear to him that others in the exercise of their lawful rights may be injured thereby. *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 353 (Tex. 1995) (citing *Buchanan v. Rose*, 159 S.W.2d 109, 110 (Tex. 1942)). However, a mere bystander who did not create a dangerous situation generally is not required to intervene and prevent injury to others. *See id.*; *see also* Restatement (Second) of Torts § 314 ("The fact that [an] actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action.").

Whether a legal duty exists is a question of law for the court. *Trammell Crow Cent. Tex., Ltd. v. Gutierrez*, 267 S.W.3d 9, 12 (Tex. 2008). In determining whether the defendant was under a duty, the court will consider several interrelated factors, including the risk, foreseeability,

---

[2] The Restatement (Second) of Torts, section 323 (1965), provides as follows:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

4

and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. *Phillips*, 801 S.W.2d at 525. Courts have also considered whether one party has superior knowledge of the risk, and whether a right to control the actor whose conduct precipitated the harm exists. *Graff v. Beard*, 858 S.W.2d 918, 920 (Tex. 1993). Appellants do not cite any authority establishing a legal duty by individuals to control the actions of a companion who is under the influence of drugs or similar behavior-altering substances.[3] Therefore, to hold that there is a duty in this case, we must interpret an existing duty to include the behavior described in the plaintiffs' pleadings or recognize a new duty under Texas law.

Appellants urge that, because appellees enabled McManus's intoxication and transported him to the party knowing he was a danger to himself and others, they created a dangerous situation from which they had a duty to protect others.[4] Appellants also contend that appellees' conduct constituted an undertaking to render services that were necessary for the protection of

---

[3] Appellants assert that appellees have cited no case law holding that appellees do *not* have a duty. This assertion misplaces the burden of pleading and the nature of duty. The general rule is that persons have no duty to protect others by controlling the actions of third parties. *Providence Health Ctr. v. Dowell*, 262 S.W.3d 324, 331 (Tex. 2008); *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000); *see also* Restatement (Second) of Torts § 315. The plaintiff must establish the existence of a duty beyond the general rule. *See Torrington*, 46 S.W.3d at 837 (Tex. 2000); *see also Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990).

[4] The Restatement (Second) of Torts section 321(1) provides as follows:

If the actor does an act and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another, he is under a duty to exercise reasonable care to prevent the risk that he has created.

third parties, the negligent performance of which resulted in liability to those third persons. *See* Restatement (Second) of Torts §§ 323, 324A.[5]

Although one does not generally have the duty to control another person or to aid a person in distress, one who chooses to exercise that control or provide the aid must do so responsibly and not make the circumstances worse. *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 312 (Tex. 1983). In *Otis*, upon learning that an employee was intoxicated while on the job, the employer suggested that the employee go home. *Id*. at 308. The employee drove away from work and caused a collision that killed other motorists. *Id*. The court held that "when, because of an employee's incapacity, an employer exercises control over the employee, the employer has a duty to take such action as a reasonably prudent employer under the same or similar circumstances would take to prevent the employee from causing an unreasonable risk of harm to others." *Id*. at 311.

The duty to protect third parties has been recognized in a product safety context. After a helicopter crashed, investigation pointed to ball bearings manufactured in two plants as problematic. *Torrington*, 46 S.W.3d at 834. The bearing manufacturer, Torrington Company,

---

[5] The Restatement (Second) of Torts section 324A provides as follows:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

6

supplied serial numbers of bearings produced in the targeted plants, but failed to mention that some bearings from one of the plants did not have serial numbers. *Id*. The helicopter manufacturer then pulled all bearings with the noted serial numbers from its shelves and sent a service bulletin advising mechanics to inspect all bearings with the noted serial numbers. *Id*. The bulletin stated that ball bearings without serial numbers were not problematic. *Id*. at 834-35. The Navy directed replacement of all bearings with the noted serial numbers. *Id*. at 835. A helicopter using an un-numbered bearing was inspected, but the potentially problematic bearing was not replaced because the directive addressed only bearings with noted serial numbers. *Id*. When the helicopter crashed, the court held that the families of the persons killed in the crash had a cause of action against the manufacturer if (1) Torrington undertook to perform services that it knew or should have known were necessary for the plaintiffs' protection, (2) Torrington failed to exercise reasonable care in performing those services, and either (3) the Navy relied upon Torrington's performance, or (4) Torrington's performance increased the plaintiffs' risk of harm. *Id*. at 838 (discussing elements of proper jury submission on duty).

Providers of alcoholic beverages can owe a duty to protect third parties under certain circumstances. In *El Chico v. Pool,* a pre-Dram Shop Act case, the supreme court recognized a duty for bars not to serve obviously intoxicated persons, and that the duty existed for the protection of third parties as well as the drinker. 732 S.W.2d 306, 312 (Tex. 1987). The court imposed the duty because "[t]he risk and likelihood of injury from serving alcohol to an intoxicated person whom the licensee knows will probably drive a car is as readily foreseen as injury resulting from setting loose a live rattlesnake in a shopping mall." *Id*. at 311. In *Venetoulias v. O'Brien*, a bar patron limited her

7

drinking until assured by a co-owner of the corporation that owned the bar that he would ensure that she had a ride home. 909 S.W.2d 236, 240 (Tex. App.—Houston [14th Dist.] 1995, writ dism'd). Venentoulias, the co-owner, took the patron's keys and money to make sure she did not try to drive herself home, and she proceeded to become so intoxicated that she needed support to walk out of the bar when it closed. *Id*. When she declined to accompany Venetoulias to a party, he put her in her car, returned her money, and put her keys in the ignition. *Id*. Although she did not remember what happened next, she attempted to drive home and was injured in a one-car accident. *Id*. The bar was held liable under the Dram Shop Act for serving alcohol to an obviously intoxicated person. *Id*. at 239 (citing Tex. Alco. Bev. Code Ann. § 2.02 (West 2007)). The court held that, although the owner had no general duty to ensure that the patron did not attempt to drive home, his promise that he would do so created a duty. *Id*. at 242. The court held that the owner "negligently created the situation and failed to act reasonably by leaving O'Brien in her car with the keys in the ignition." *Id*.

In the absence of a promise to arrange a safe ride home, however, the supreme court has declined to impose a similar duty on social hosts to prevent their intoxicated guests from inflicting injury on others. *Graff*, 858 S.W.2d at 919-20. In *Graff*, a motorcyclist injured by a driver sued the hosts of a party the driver had attended. *Id*. at 918. The motorcyclist alleged that the party hosts provided alcohol, the driver became intoxicated, and the driver's intoxication caused him to collide with the motorcyclist. *Id*. Although the court of appeals had found that the hosts owed a duty to third parties to monitor their guests and prevent the guests from becoming intoxicated and driving while intoxicated, the supreme court reversed, stating as follows:

8

[G]iven the ultimate power of guests to control their own alcohol consumption and the absence of any legal right of the host to control the guest, we find the arguments for shifting legal responsibility from the guest to the host, who merely makes alcohol available at social gatherings, unconvincing. As the common law has long recognized, the imbiber maintains the ultimate power and thus the obligation to control his own behavior: to decide to drink or not to drink, to drive or not to drive. We therefore conclude that the common law's focus should remain on the drinker as the person primarily responsible for his own behavior and best able to avoid the foreseeable risks of that behavior.

*Id*. at 921-22; *see also Reeder v. Daniel*, 61 S.W.3d 359, 364 (Tex. 2001) (social host has no duty not to make alcohol available to minors); *Smith v. Merritt*, 940 S.W.2d 602, 605 (Tex. 1997) (social host has no duty to passenger to prevent nineteen-year-old guest from drinking and driving). The supreme court declined to impose a duty on social hosts where the legislature, in enacting dram shop liability for licensed purveyors of alcohol, had considered and declined to impose a duty on social hosts. *Graff*, 858 S.W.2d at 919.

This court similarly has declined to recognize a duty for persons who transport an intoxicated person to a dangerous location to protect that person from those dangers. *Rocha v. Faltys*, 69 S.W.3d 315, 321 (Tex. App.—Austin 2002, no pet.). Faltys, knowing that Rocha was intoxicated and could not swim, nevertheless took Rocha to a river and led him to a spot where one could jump from a cliff into a swimming hole. *Id*. This Court held that Faltys did not thereby create a dangerous situation from which he had a duty to protect Rocha. *Id*. This Court relied on the principle "that an individual who chooses to consume alcohol maintains the ultimate power over his situation and thus the obligation to control his own behavior." *Id*. at 320.

Courts have described the bounds of a duty to protect persons from the actions of others in situations apart from intoxicated individuals who injure themselves and others. For

example, the supreme court held that a regional boy scout council had a duty to scouts not to knowingly appoint a child molester as a scoutmaster. *Golden Spread Council, Inc. v. Akins*, 926 S.W.2d 287, 291-92 (Tex. 1996). The Tyler court of appeals held that a physician may owe a duty to the motoring public to warn a patient of drug side effects. *Golden v. Tips*, 651 S.W.2d 364, 369-70 (Tex. App.—Tyler 1983, no writ). By contrast, the supreme court held that, although a physician owed his patient a duty to properly diagnose and treat the patient, he did not owe that duty to others. Consequently, the doctor could not be held liable for the injuries and death inflicted by the patient after the doctor released him from restraint and intense supervision. *Van Horn v. Chambers*, 970 S.W.2d 542, 545-46 (Tex. 1998). The court reasoned that the doctor-patient relationship does not give the doctors the right or duty to control their patients. *Id*. at 547. In *Tharpar v. Zezulka*, the court reaffirmed the *Van Horn* holding and further held that doctors whose patients make threats against third parties have no duty to warn those third parties in the absence of a doctor-patient relationship with the third parties. 994 S.W.2d 635, 638-40 (Tex. 1999).

Each of these cases has distinguishing characteristics from this case. An obvious distinction is that none of them involves a tortfeasor who voluntarily ingested hallucinogens. Further, the supreme court's decision not to impose a duty to warn in *Tharpar* was based in part on the statutory confidentiality of doctor-patient communications. *Id*. *Otis* hinges on a power to control under an employer-employee relationship that is absent here. *See Otis*, 668 S.W.2d at 311. *Venetoulias* and *Rocha* are different in that they concern an individual's duty to an intoxicated person, not to the public at large. *See Venetoulias*, 909 S.W.2d at 242; *see also Rocha*, 69 S.W.3d at 321. The *El Chico* opinion has been circumscribed by the legislature and the supreme court itself,

at least in the context of social hosts serving alcohol. *See Graff*, 858 S.W.2d at 919. However, the additional facts in this case—party guests who knowingly bring an incoherent, drug-addled, armed, and threatening person to a party and allow him to have contact with unsuspecting fellow guests— test the limits of the parameters of the duty discussed in these cases and circumscribed by the supreme court in *Graff*.

The arguments for recognizing a duty in this case have force. McManus foolishly chose to consume the hallucinogenic substances he did, particularly in excess. Appellees' actions as described by the petition, if proven, are reprehensible. They were allegedly aware that McManus's consumption of drugs had put him in a precarious mental state. The consequences to appellants of appellees' actions in transporting McManus to the party and failing to alert others to his condition, if proven as alleged, contributed to a chain of events that caused significant damage to a number of people. McManus himself was convicted of eight counts of aggravated assault with a deadly weapon, and sentenced to terms ranging from five to fifteen years in prison. Appellants allege that none of this would have happened had appellees not taken McManus to the party. Our role, however, is not to determine whether appellants have alleged reprehensible behavior or even behavior that can be characterized as part of the cause of the events at issue. Rather, our role is to determine whether appellants have pleaded a breach of a legal duty owed to them by appellees.

Regarding the risk, foreseeability, and likelihood of injury, appellants allege the following.

- Appellees provided and/or observed McManus consume an excessive amount of illegal drugs, including marijuana and more than three times the normal

11

dose of hallucinogenic mushrooms. At one point, appellants describe McManus's ingestion of the excessive amount of mushrooms as "accidental."

- Appellees knew McManus had a knife.

- McManus's behavior turned "more bizarre, threatening, and unpredictable" before they went to the party. "It was apparent at the Hunkin home to the defendants Abbyad, Nuckolls, McLemore and Hunkin that the defendant McManus was a danger to himself and others."

- Appellees took McManus to the party despite observing that he "had already begun to hallucinate, and that he was having a bad trip."

- Appellees took McManus to the party despite knowing that strangers would ridicule him. Taking McManus to the party exposed him "to a situation that would certainly result in danger to defendant McManus or those to [whom] the defendant McManus was exposed."

- En route to the party, McManus's behavior became "increasingly bizarre," as he behaved "insanely with a wild look in his eyes," was "completely incoherent and lacked the ability to communicate," and acted "threateningly to himself and others."

- At the party, McManus's behavior "became increasingly bizarre and threatening toward himself and others."

- "At all times material hereto, Defendant McManus relied on these Defendants who had full control of him to take care of him and the others he was exposed to."

A problem with these allegations is that they are not specific about the nature of the risk posed, the foreseeability of the result, and the likelihood of injury. Unlike in *Venetoulias*, there is no allegation that McManus took the drugs while relying on appellees' promise that they would ensure his safety.[6] While there is an allegation that McManus had a knife, appellants do not allege

_____

[6] Appellants allege that McManus relied on appellees, but there is no allegation that his reliance was founded on a promise by appellees—a factor critical to the recognition that the

that appellees had reason to believe that McManus would use the knife to attack someone or that he was threatening to do so. For instance, there is no allegation that McManus was threatening to use the knife to hurt himself or others. Beyond general assertions of "threat" and "danger," the allegations do not set out what danger McManus posed to others that appellees should have reasonably been aware of and taken action to prevent before he actually started attacking party guests. There are not sufficient facts pleaded to support the imposition of a duty based on the foreseeability of McManus's ultimate actions and the perception of the likelihood of injury to others.

The argument for recognizing a duty in this case becomes more problematic when we consider the countervailing elements of the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. The social utility of McManus's consumption of drugs is zero. The utility of appellees taking McManus to the party is negligible, and nonexistent beyond not abandoning him at Hunkin's house. Beyond that, however, the undefined nature of the duty appellants would impose makes assessing its existence difficult. There is no showing that appellees had any right to control McManus.[7] The magnitude of the burden of guarding against injury depends on the trigger and scope of the duty. Did the duty arise when appellees provided McManus with illegal drugs, when they saw him ingest them, when they recognized that he had consumed an inordinate amount, when they began to witness the results, when they chose to take him to the party, or when they elected not to monitor or attempt to control his conduct? Does the duty attach only if the observers provide him

bar owner bore a duty to his bar's patron. *Venetoulias v. O'Brien*, 909 S.W.2d 236, 240 (Tex. App.—Houston [14th Dist.] 1995, writ dism'd).

[7] This is distinct from the possible *ability* to control his actions.

13

with the drugs, or when they transport a drug-addled person to a location where he will come into contact with others? Did they have a duty to keep him in the location where he consumed the drugs, or could they move him? When does the duty end? A potential consequence of imposing a duty on appellees at any of these points is that it might encourage future observers of drug intoxication to abandon intoxicated or drug-addled persons before a duty attaches lest they be held responsible for the intoxicated or drug-addled person's actions despite the fact that such a person's potential behavior is, by its nature, unpredictable.[8]

Ultimately, we conclude that appellants have not alleged facts sufficient to demonstrate that appellees owed them a duty to have attempted to control McManus's behavior or not transport him to the party under Texas law. Texas common law is fundamentally premised on individuals' responsibility for their own actions. *Rocha*, 69 S.W.3d at 321. The exceptions to that rule—e.g. employer-employee, parent-child, *see Phillips*, 801 S.W.2d at 525—all involve situations where the defendant either had a recognized legal obligation to control the other person's conduct or the right to do so. These important factors are not present here. Although appellants argue for application of the duties described by the Restatement of Torts sections 321(1) and 324A and adopted by Texas courts, we find the duty described in section 319 more relevant to the facts in this case. *See Van Horn*, 970 S.W.2d at 547. While appellants do not expressly argue here for application of the duty described by section 319, that section more plainly and directly states the duty

---

[8] This is a hypothetical concern for the precedential effect of imposing a duty here on another case. The appellees' alleged motivation for moving McManus in this case was not protection of McManus or others, but exploitation.

that appellants seek to impose through sections 321 and 324A. The Restatement (Second) of Torts section 319 describes the duty that is the essence of appellants' case:

> One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

Restatement (Second) of Torts § 319 (1965). In response to arguments based on section 319, the supreme court has stated, "We have not adopted section 319 as the law in Texas." *Van Horn*, 970 S.W.2d at 547. The court stated that, although such a duty might apply in circumstances involving an employer-employee relationship as in *Otis*, it "does not apply to a case where there exists no inherent right to control another, such as in a physician-patient relationship." *Id*. If a doctor does not owe a duty to protect third parties from a patient because she has no right or duty to control her patient's behavior in treatment, it is difficult to see how social companions have that right or duty. The court's rejection of the duty described in section 319 informs our decision on whether to recognize a similar duty under the frameworks of sections 321(1) and 324A. In the face of Texas courts' repeated emphasis on the personal responsibility of the person who chooses to chemically alter his mental state—*see Van Horn*, 970 S.W.2d at 547 (physician has no duty to protect other health-care workers from hospital patient), *Graff*, 858 S.W.2d at 919-20 (social hosts are not responsible for the actions of their intoxicated guests), and *Rocha*, 69 S.W.3d at 321 (friend has no duty to stop another friend from committing a dangerous act)—we conclude that the trial court did not err in dismissing appellants' claims.

15

Appellants' allegations that appellees created the danger by transporting a drug-addled person exhibiting bizarre behavior to a party are disturbing. The relevant authority, however, sets out the rule that, absent some sort of special relationship recognized in the law or voluntarily taking control of another with the other's reliance on that control, a person is not responsible for the tortious acts of another. Under existing Texas law, we conclude that plaintiff's allegations outline a case that McManus created a dangerous situation by consuming large quantities of illegal, behavior-altering drugs, but fail to show that appellees owed appellants a legal duty to control or prevent McManus's subsequent actions.

Affirmed.

_____

G. Alan Waldrop, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop;
    Chief Justice Law Not Participating

Affirmed

Filed:   November 4, 2009