GERBER, J.
The plaintiff filed a complaint essentially alleging that the defendant negligently played a prank which caused injuries to her. The circuit court dismissed the case with prejudice, reasoning that the plaintiff failed to allege that the defendant created a “zone of risk.” We reverse. The plaintiff sufficiently alleged that the defendant created a “zone of risk” for which the defendant owed the plaintiff a duty of reasonable care.
*1254 We accept as true the facts alleged in the second amended complaint. See Goodall v. Whispering Woods Ctr., L.L.C., 990 So.2d 695, 697 (Fla. 4th DCA 2008) (“In reviewing an order granting a motion to dismiss ... [t]he facts alleged in the complaint must be accepted as true and all reasonable inferences are drawn in favor of the pleader.”) (internal citation and quotations omitted). The second amended complaint alleged, in pertinent part:
5. The parties were dating at the time of this incident and had traveled to West Virginia to allow the Plaintiff an opportunity to meet the Defendant’s family....
6. While there, the parties planned a day of water skiing on a lake. Unbeknownst to the Plaintiff, the Defendant planned to play a trick on the Plaintiff to induce her to jump off a very high cliff into the lake.
7. The Defendant knew that the only way to get the Plaintiff to jump from the cliff was to trick her into doing so.
8. While hiking up to the top of the cliff on the lake, the Plaintiff repeatedly advised the Defendant that she was not comfortable with the climb and was afraid to descend alone. He refused to accompany her to the bottom, continuing instead to the top. He encouraged her to continue by telling her that the view from the top is something that he used to share with his deceased brother, and now wanted to share with her.
9. Feeling compelled to continue because of the comments made by the Defendant, and being too afraid to descend on her own, the Plaintiff continued to the top of the cliff. Once there she became too frightened to look over the edge and turned to try to descend.
10. While she was not looking, the Defendant jumped off the cliff into the water below. When the Plaintiff turned to ask him to leave, he was nowhere to be found.
11. The Plaintiff yelled to the bottom where the Defendant’s nephew was in the water to find out what happened to the Defendant.
12. The Defendant’s nephew responded by stating that he did not know where the Defendant was and that she should jump to find him.
13. Due to her concern and love for the Defendant, and in an effort to save the Defendant, the Plaintiff jumped off the cliff into the water below and was severely injured when she landed.
[[Image here]]
17. The statements and actions of the Defendant created a zone of risk to the Plaintiff. By creating said zone of risk, the Defendant had a legal duty to lessen the risk or see that sufficient precautions [were] taken to protect the Plaintiff from the harm that the risk posed.
18. The Defendant breached that duty owed to the Plaintiff by not only failing to lessen the risk or provide precautions, but by actually inducing her to sustain permanent injury via trickery.
The defendant’s motion to dismiss argued that the plaintiff failed to state a cause of action for negligence. Specifically, the defendant contended that he had no legal duty to prevent or stop the plaintiff from jumping into the lake. He argued that the plaintiffs “zone of risk” theory did not apply because he had no “control, ownership or maintenance responsibilities” over the property. He also argued that the plaintiffs “trickery” allegation was misplaced because “ ‘[t]rickery’ is not negligence.”
At the hearing on the motion, the defendant explained in greater detail why he *1255 believed the plaintiffs “zone of risk” theory did not apply:
Here we’re just talking about the side of a lake with a cliff up to the water’s edge. [The defendant] does not own this lake. He does not own the cliff. He didn’t create the zone of risk. He hasn’t put anything into it or changed its characteristics in any sense.
The defendant then explained in greater detail why he believed that the plaintiffs “trickery” allegation was misplaced:
I’ve never seen a tort called trickery. I understand what trickery means but certainly that’s not negligence. Tricking is ... pre-thought-out and that would be something in the intentional tort category....
The plaintiff responded that her negligence action should not be characterized as an intentional tort just because she alleged that the defendant engaged in trickery. According to the plaintiff, to demonstrate how the defendant created a zone of risk, she alleged that he engaged in trickery. The plaintiff stated that, through trickery, the defendant caused her to jump in the water where otherwise she would not have.
The circuit court articulated its understanding of the plaintiffs argument by stating that “[the defendant] put [the plaintiff] in that situation and it was foreseeable that she would act the way she did and it was reasonably foreseeable that she [would] get injured.” However, the court later entered an order granting the defendant’s motion to dismiss with prejudice. The court stated:
[The second amended complaint] fails to state a cause of action for the claim of Negligence based on a creation of a zone of risk. This second amended complaint is the third attempt to plead a cause of action, therefore the motion is granted with prejudice.
This appeal followed. Our review is de novo. See Gomez v. Fradin, 41 So.3d 1068, 1070 (Fla. 4th DCA 2010) (“A trial court’s order granting a motion to dismiss is reviewed de novo.”).
The primary dispute between the parties is whether the plaintiffs second amended complaint alleged a set of facts which establish that the defendant created a foreseeable zone of risk and thereby owed a duty of care to the plaintiff pursuant to McCain v. Florida Power Corp., 593 So.2d 500 (Fla.1992). In McCain, our supreme court held:
The duty element of negligence focuses on whether the defendant’s conduct foreseeably created a broader “zone of risk” that poses a general threat of harm to others.... [That element] is a minimal threshold legal requirement for opening the courthouse doors....
... Foreseeability clearly is crucial in defining the scope of the general duty placed on every person to avoid negligent acts or omissions. Florida, like other jurisdictions, recognizes that a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others. As we have stated:
Where a defendant’s conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses.
Thus, as the risk grows greater, so does the duty, because the risk to be perceived defines the duty that must be undertaken.
The statute books and case law, in other words, are not required to catalog and expressly proscribe every conceivable risk in order for it to give rise to a *1256 duty of care. Rather, each defendant who creates a risk is required to exercise prudent foresight whenever others may be injured as a result. This requirement of reasonable, general foresight is the core of the duty element.... As a corollary, the trial and appellate courts cannot find a lack of duty if a foreseeable zone of risk more likely than not was created by the defendant.
Id. at 502-03 (internal citations and footnotes omitted). The supreme court since has recognized that reliance on the McCain foreseeability test is appropriate because the court “intended McCain to function as a restatement of the law of negligence.” United States v. Stevens, 994 So.2d 1062, 1067 (Fla.2008) (internal citations and quotations omitted).
Applying McCain, we find that the plaintiffs second amended complaint alleged a set of facts which establish that the defendant created a foreseeable zone of risk and thereby owed a duty of care to the plaintiff. As the plaintiff alleged, the defendant induced the plaintiff to climb to the top edge of a very high cliff despite the plaintiff repeatedly advising the defendant that she was not comfortable with the climb and was afraid to descend alone. That alleged conduct created a foreseeable zone of risk in the form of a fall due to the terrain, gravity, or a combination of both. See Stevens, 994 So.2d at 1067 (quoting Restatement (Second) of Torts § 302 (1965)) (“A negligent act or omission may be one which involves an unreasonable risk of harm to another through ... a force of nature.”). As a result, the defendant owed the plaintiff a duty either to lessen the risk or see that sufficient precautions were taken to protect her from the harm which the risk posed.
Only a handful of Florida decisions have discussed the legal ramifications of pranks, tricks, or practical jokes. None of those decisions, though, have addressed the issue presented here, that is, whether a prank is capable of giving rise to a negligence action against the prankster. See, e.g., Bryant v. CSX Transp., Inc., 577 So.2d 613, 616 (Fla. 1st DCA 1991) (“[T]he jury was properly instructed that it should find the railroad negligent if the railroad failed to take reasonable steps to prevent reasonably foreseeable danger to its employee from the intentional horseplay or misconduct of another employee.”); State Auto Mut. Ins. Co. v. Scroggins, 529 So.2d 1194,1195 (Fla. 5th DCA 1988) (“[W]e find that the exclusion section in the homeowners policy issued to [the insured]— ‘bodily injury ... intended by the insured’ — is applicable to the intentional act of pulling a chair out from under a victim in order to see him fall. The fact that an unintended serious injury resulted from the intended fall is irrelevant to the issue of coverage.”); Ford Motor Credit Co. v. Sheehan, 373 So.2d 956, 958 (Fla. 1st DCA 1979) (debtor stated cause of action against creditor for intentional infliction of emotional distress based on allegations that creditor, to discover debtor’s whereabouts, falsely reported to debtor’s mother that debtor’s children had been involved in a serious automobile accident).
Other states’ courts, however, have recognized that a prank is capable of giving rise to a negligence action against the prankster. See, e.g., Vetter v. Morgan, 22 Kan.App.2d 1, 913 P.2d 1200, 1204 (1995) (“A negligence claim may be based on intentional rude pranks and horseplay that cause unintended injury.”); Langford v. Shu, 258 N.C. 135, 128 S.E.2d 210, 212 (1962) (“The defendant in the instant case owed to the plaintiff the duty not to subject her to a fright which, in the exercise of due care or reasonable foresight, [the defendant] should have known was likely to result in some injury to her.”); John *1257 ston v. Pittard, 62 Ga.App. 550, 8 S.E.2d 717, 718 (1940) (in a negligence action for injuries which the plaintiff allegedly sustained because of the defendants’ conduct in perpetrating a practical joke, “[t]he defendants would be hable for such consequences of their acts as they should have foreseen”). These decisions are consistent with our decision today.
In the answer brief, the defendant raises several arguments. We find it necessary to address only two of those arguments here.
First, the defendant argues that a practical joke is an intentional act and, thus, a practical joke gone awry should be considered an intentional tort. In support, the defendant cites Scroggins and Shee-han. However, those cases, mentioned above, do not address whether a prank is actionable only as an intentional tort as opposed to negligence. More significantly, our supreme court “has defined an intentional tort as one in which the actor exhibits a deliberate intent to injure or engages in conduct which is substantially certain to result in injury or death.” D’Amario v. Ford Motor Co., 806 So.2d 424, 438 (Fla.2002) (citation omitted). The supreme court distinguished negligence from an intentional tort as follows:
Where a reasonable man would believe that a particular result was substantially certain to follow, he will be held in the eyes of the law as though he had intended it.... However, the knowledge and appreciation of a risk, short of substantial certainty, is not the equivalent of intent. Thus, the distinction between intent and negligence boils down to a matter of degree. Apparently the line has been drawn by the courts at the point where the known danger ceases to be only a foreseeable risk which a reasonable man would avoid (negligence), and become[s] a substantial certainty.
Id. (citations omitted). “This substantial-certainty standard is an objective inquiry, decided as a matter of law.” Petit-Dos v. Sch. Bd. of Broward Cnty., 2 So.3d 1022, 1024 (Fla. 4th DCA 2009).
Applying those concepts here, we conclude that the plaintiffs characterization of the defendant’s alleged conduct in this case does not constitute an intentional tort under the supreme court’s “substantially certain” test. The plaintiff has not alleged or implied that the defendant deliberately intended to injure her or engaged in conduct which was substantially certain to result in injury or death. On the contrary, as the plaintiff alleges, the defendant apparently jumped into the lake first without that conduct resulting in his injury or death. Accordingly, we reject the defendant’s intentional tort argument.
Second, the defendant argues that the law does not impose a duty for anyone to prevent others from “voluntarily” harming themselves. To support that argument, the defendant cites a Texas case, Rocha v. Faltys, 69 S.W.3d 315 (Tex.App.2002). In Rocha, two fraternity brothers consumed some beer and then went to a local swimming hole. They climbed to the top of a cliff which overlooked the swimming hole. The defendant dove into the water and encouraged Rocha to do the same. Rocha, who was unable to swim, jumped from the cliff and drowned. Rocha’s estate sued the defendant for negligence. The defendant moved for summary judgment on the ground that he owed Rocha no duty. The estate argued that the defendant, by taking Rocha to the top of the cliff and encouraging him to jump while he was intoxicated and could not swim, created a dangerous situation, thus giving rise to a duty to prevent Rocha’s death.
The trial court granted the defendant’s motion for summary judgment, which the *1258 appellate court affirmed. The appellate court reasoned:
It is a basic principle of legal responsibility that individuals should be responsible for their own actions and should not be liable for others’ independent misconduct. However, if a party negligently creates a situation, then it becomes his duty to do something about it to prevent injury to others if it reasonably appears or should appear to him that others in the exercise of them lawful rights may be injured thereby.
[The defendant’s] act of taking [Rocha] to the top of the cliffs, in and of itself, does not give rise to a legal duty. Simply taking [Rocha], an adult man, to the location where [Rocha] could choose to engage in an allegedly dangerous activity does not constitute negligent creation of a dangerous situation....
... Nevertheless, we must look at the particular facts of a case to determine whether a duty exists. ... In holding that [the defendant’s] actions did not create a duty, we do not decide whether encouragement could ever give rise to a duty but only that on these facts a duty did not arise.
The “encouragement” alleged to create a duty in the instant ease was implicit encouragement at most.... [T]here is no evidence that [the defendant] actively encouraged, urged, pressured, forced, or coerced [Rocha] into jumping from the cliff. Rather, [the defendant] told [Rocha] that he did not have to jump if he did not want to; [Rocha] decided to jump from the cliff. Under these facts we decline to impose a legal duty on [the defendant] for negligently creating a dangerous situation.
69 S.W.3d at 321-22 (internal quotations, citations, and footnote omitted).
We find Rocha to be distinguishable from the instant case. Here, contrary to the defendant’s argument, the plaintiffs second amended complaint never suggests that she “voluntarily” jumped off the cliff. Further, according to the second amended complaint, the defendant allegedly did more than simply taking the plaintiff to the top of the cliff. The defendant allegedly ignored the plaintiffs repeated statements that she was not comfortable with the climb, and he allegedly refused to accompany her to the bottom. The defendant then allegedly tricked the plaintiff into believing that he had fallen into the water and that she should jump in an effort to save him. Such allegations, if true, would constitute evidence that the defendant actively “forced” the plaintiff to climb to the top of the cliff and then “pressured” or “coerced” the plaintiff into jumping off the cliff to save a loved one. Thus, on these allegations, we recognize a legal duty on the defendant for negligently creating a dangerous situation.
In reaching this holding, we note that the second amended complaint alleged an alternative theory that the defendant owed the plaintiff a duty of care because he was an emergency room physician and allegedly did not treat the plaintiff or obtain treatment for her. The circuit court’s order did not address that alternative theory. We reject that theory without further comment.
The plaintiffs initial brief also alleged other alternative theories which she did not present to the trial court. We have not considered those theories in this appeal. See Sunset Harbour Condo. Ass’n v. Robbins, 914 So.2d 925, 928 (Fla.2005) (“In order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved.”) (citation omitted); Gomez, 41 *1259 So.3d at 1070 (“In reviewing an order granting a motion to dismiss, this court’s ‘gaze is limited to the four corners of the complaint.’ ”) (citation omitted). Therefore, in remanding the case, we limit the plaintiffs theory of liability to the allegations stated in this opinion.

Reversed and remanded.

DAMOORGIAN, J., concurs.
MAY, J., concurs specially with an opinion.