*1070
 
 CIKLIN, J.
 

 In this matter we decide whether the trial court erred in dismissing certain counts in an action brought by nineteen condominium unit owners against the condominium association and various members of its board of directors. The trial court dismissed five of eight counts on the basis that the claims first had to be pursued through non-binding arbitration. We hold that arbitration was not a condition precedent to filing suit under the facts of this case and reverse the trial court’s order of dismissal. Secondly, we consider whether the trial court erred in granting summary judgment on two counts. Because no genuine issues of material fact existed, the trial court’s decision was entirely appropriate.
 

 The appellants are a group of unit owners in the Lakes of Carriage Hills Condominiums located in Broward County, Florida (hereinafter referred to as “the unit owners”). The Lakes of Carriage Hills is a complex of twelve structures organized as separate condominium buildings but governed by an administrative board consisting of seven board members elected by the 520 condominium unit owners. The appellees are both the association which governs as well as individual members of the association’s board of directors (hereinafter referred to as “the association/directors”). The genesis of this litigation was the response by the association/directors in the aftermath of Hurricane Wilma in 2005.
 
 [1]
 
 On January 15, 2008, the unit owners filed their second amended eight count complaint containing a variety of general and specific allegations. Upon the association/directors’ motion, counts II, III, IV, V & VII were dismissed by the trial court on the basis that the claims were “disputes” as defined by § 718.1255(1), Florida Statutes and therefore subject to mandatory pre-suit nonbinding arbitration. Counts I and VI survived the motion to dismiss but were later disposed of by way of summary judgment in favor of the association/directors.
 

 Order Dismissing Counts II, III, IV, V & VII
 

 A trial court’s order granting a motion to dismiss is reviewed de novo.
 
 See Habitat II Condo., Inc. v. Kerr,
 
 948 So.2d 809, 811 (Fla. 4th DCA 2007). “In reviewing an order granting a motion to dismiss, this court’s ‘gaze is limited to the four corners of the complaint.’ ”
 
 Goodall v. Whispering Woods Ctr., L.L.C.,
 
 990 So.2d 695, 697 (Fla. 4th DCA 2008). (citation omitted). As a general rule, all allegations in a well-pleaded complaint must be accepted as true when ruling on a motion to dismiss.
 
 Smith v. 2001 S. Dixie Highway, Inc.,
 
 872 So.2d 992, 993 (Fla. 4th DCA 2004).
 

 Section 718.1255(4)(a), Florida Statutes provides that as a condition precedent to court litigation, a “dispute” between a unit owner and condominium association must be submitted to non-binding arbitration.
 
 See also Habitat II Condo., Inc.,
 
 948 So.2d at 809, 812. “The violation of a condition precedent to filing an action in court should properly be a dismissal.”
 
 Neate v. Cypress Club Condo., Inc.,
 
 718 So.2d 390, 392 (Fla. 4th DCA 1998).
 

 
 *1071
 
 A “dispute” is defined as a “disagreement between two or more parties that involves” issues ranging from the authority of the association to alter or add to a common area within a condominium complex to failure of the board of directors, when so required, to adequately conduct meetings or take official action.
 
 See
 
 § 718.1255(1), Fla. Stat. (2009). The term “dispute” does not, however, include “breaches of fiduciary duty by one or more directors.”
 
 Id.
 

 In the instant case, the second amended eight count complaint alleged that the association/directors breached their fiduciary duties to unit owners with respect to a variety of board activity and decisions following the impact of Hurricane Wilma. The subject allegations in each count of the unit owners well-pleaded complaint, which must be accepted as true for purposes of our review, were not of the type normally associated with “disputes” as defined by Florida’s Condominium Act and thus, not subject to mandatory pre-suit non-binding arbitration.
 
 See Carlandia Corp. v. Obemauer,
 
 695 So.2d 408, 410 (Fla. 4th DCA 1997),
 
 receded from on other grounds by Neate,
 
 718 So.2d at 390 (“The nonbinding arbitration required by section 718.1255(4) is well suited to deal with everyday condominium disputes such as keys, pets, proxies, renters, election violations and offensive exterior decoration or maintenance of a unit. These types of cases are factually simple. They can be presented to an arbitrator without extensive discovery, expert testimony or sophisticated legal assistance.”). Because the allegations framed by the second amended complaint did not constitute an arbitrable dispute as contemplated by the legislature, the trial court’s order of dismissal as to those counts must be reversed.
 

 Order Granting Summary Judgment as to Counts I and VI
 

 Review of an order granting summary judgment is de novo.
 
 See Volusia County v. Aberdeen at Ormond Beach, L.P.,
 
 760 So.2d 126, 130 (Fla.2000). In determining the correctness of summary judgment, an appellate court must accept the facts as pleaded and view all possible inferences in the light most favorable to the non-moving party.
 
 See DuBois v. Amestoy,
 
 652 So.2d 919, 920 (Fla. 4th DCA 1995). “A movant for summary judgment has the initial burden of demonstrating the nonexistence of any genuine issue of material fact. But once he tenders competent evidence to support his motion, the opposing party must come forward with counter-evidence sufficient to reveal a genuine issue.”
 
 Landers v. Milton,
 
 370 So.2d 368, 370 (Fla.1979).
 

 Count I of the second amended complaint seeks to enjoin the association/directors from holding “secret meetings” without notice and involvement of unit owners. A claim for a permanent injunction is an extraordinary remedy that must only be granted sparingly.
 
 See Hiles v. Auto Bahn Fed’n, Inc.,
 
 498 So.2d 997, 998 (Fla. 4th DCA 1986). “A party seeking an injunction under general Florida case law must demonstrate: 1) irreparable harm; 2) a clear legal right; 3) an inadequate remedy at law; 4) consideration of the public interest.”
 
 Id.
 

 In the instant case, the association/directors submitted the affidavits of association president Patricia Lawson and individual defendants Fradin, Weiss, Weller and Hirsch in support of its motion for summary judgment. Collectively, these affidavits stated that both the individual directors named in the suit as well as the then current board of directors performed their duties in compliance with the Florida Condominium Act and the by-laws of the association. The only evidence submitted
 
 *1072
 
 in opposition to the association’s motion for summary judgment pertained to the action and meetings held by
 
 past
 
 board members. Further, the unit owners did not submit any competent record evidence establishing a present, existing violation of the Florida Condominium Act by the current board of directors or that the unit owners lacked an adequate remedy at law or faced irreparable harm if an injunction was not issued.
 
 See, e.g., Hiles,
 
 498 So.2d 997 (holding that injunctive relief may not be used to enforce a claim for money damages). Finally, it is difficult to discern how the unit owners’ would continue to suffer the “irreparable harm” necessary to obtain injunctive relief in that the association’s board of directors had experienced an almost complete turnover in membership since the institution of the instant litigation.
 

 The association/directors met its initial burden of coming forward with evidence in support of its motion for summary judgment. As such, the burden to refute the claims shifted to the unit owners in order to avoid summary judgment.
 
 See Landers,
 
 870 So.2d at 370. Since the unit owners counter-evidence failed to do so, the trial court appropriately granted the association/directors’ motion for summary judgment as to the unit owners’ claim for a permanent injunction.
 

 For similar reasons, we also find that the trial court correctly granted summary judgment in favor of the association/directors as to count VI. This count alleged that the association/directors mis-allocated Hurricane Wilma insurance proceeds that “belonged” to building five in the twelve building complex. The second amended complaint alleged that the unit owners in building five suffered damages as a result of their potential exposure to future claims by the insurance company because the remitted insurance proceeds were used to repair buildings other than building five. In support of their motion for summary judgment, the association/directors presented affidavits from many board members asserting that building five suffered minimal damage. Further, the affidavits stated that the insurer had become insolvent and had already been liquidated. The assoeiation/directors’ evidence in support of its motion also represented that, at the time of the hearing on the association/directors’ motion for summary judgment, no claim had been filed by the insurer to recoup insurance proceeds allegedly earmarked specifically to building five.
 

 At the hearing on association/directors’ motion for summary judgment, the unit owners acknowledged that their claim embodied in count VI was speculative in nature. The unit owners failed to present sufficient counter-evidence to show the existence of a genuine issue of material fact.
 
 See Landers,
 
 370 So.2d at 370. Count VI of the second amended complaint presented a theoretical, speculative claim lacking in merit and unsubstantiated by any type of proof. Summary judgment was appropriately granted as to this count.
 

 Reversed in part; affirmed in part.
 

 GROSS, C.J., and STEVENSON, J., concur.
 

 [1]
 

 . Hurricane Wilma initially formed on October 15, 2005. It was the most intense hurricane (as measured by minimum central pressure) ever recorded in the Atlantic basin and the third category 5 hurricane of the record-breaking 2005 hurricane season. Wilma made landfall on the southwest coast of Florida, near Naples and exited the coast of Florida near the Town of Palm Beach. Nat'l Climatic Data Ctr., U.S. Dep't of Commerce, Special Report: Hurricane Wilma (2005), http://www.ncdc.noaa.gov/special-reports/ wihna.html