CIKLIN, J.
PNC Bank, N.A. appeals the trial court’s final order granting summary judgment in favor of Progressive Employer Services, LLC, et al. (collectively referred to as “the borrowers”) on the borrowers’ claim that PNC Bank breached the credit agreement entered into between the parties. We reverse as PNC Bank did not breach the credit agreement since the borrowers could only early terminate the fixed two-year agreement upon ninety days’ advance notice which the borrowers admit that they did not provide.
In June 2005, PNC Bank and the borrowers executed a two-year revolving credit and security agreement (the “Agreement”) whereby PNC Bank provided the borrowers with a multi-million dollar working capital credit line. To secure any outstanding money lent, PNC Bank had a lien *657 on the borrowers’ accounts receivable. The Agreement was to remain in full force and effect until June 9, 2007. Paragraph 13.1 of the Agreement included the sole method for terminating the Agreement and releasing the lien, prior to June 9, 2007:
13.1. Term. This Agreement ... shall become effective on the date hereof and shall continue in full force and effect until June 9, 2007 (the “Term”) unless sooner terminated as herein provided.... Borrowers may terminate this Agreement at any time upon ninety (90) days prior written notice upon payment in full of the Obligations. In the event the Obligations are prepaid in full prior to the last day of the Term ..., Borrowers shall pay ... an early termination fee in an amount equal to ... .25% of the Maximum Facility Amount if the Early Termination Date occurs on or after the first anniversary of the Closing Date to and including the date immediately preceding the second anniversary of the Closing Date.
In September 2006, about nine months before the end of the agreed term, the borrowers decided to terminate the credit line. The borrowers stipulated that they did not provide the required ninety days’ prior written notice as set forth in the Agreement. PNC Bank contends that the borrowers only provided it with a one-day notice by sending a letter on September 19, 2006 advising the bank of their intention to terminate the Agreement the next day.
The borrowers acknowledged that they made a business decision to terminate the Agreement because they had obtained a credit line with another bank (HSBC) at a more favorable interest rate. The borrowers had figured that the only penalty would be the “early termination fee” of $23,750. As such, they requested that PNC Bank provide them with an “estoppel letter” stating the amount due for PNC Bank to release its lien on the borrowers’ accounts receivable. In response to the borrowers’ request, PNC Bank provided them with a letter (the “Estoppel Letter”) which set forth the total outstanding indebtedness owed to PNC Bank as of September 20, 2006. The Estoppel Letter set out the amounts that the borrowers would be required to pay PNC Bank for it to release its lien on their receivables the next day. The itemized list in the Estop-pel Letter included an “Early Termination Fee” in the amount of $23,750, and a “90 Day Written Notice” charge in the amount of $153,048.28.[1]
In an email dated September 20, 2006, in-house counsel for the borrowers wrote to PNC Bank’s lawyer advising him that the borrowers did not dispute the Early Termination Fee but were protesting the “90 Day Written Notice” charge. In this email communication, the borrowers acknowledged that they would pay the “90 Day Written Notice” charge of $153,048.28, but claimed it was under coercion because of the “impending circumstances of having to close” their new loan that day. In this email, the borrowers’ counsel wrote that the borrowers’ decision to pay off the loan with PNC Bank, including the “90 Day Written Notice” amount, did not constitute a waiver of their rights under the loan documents. Upon receipt of the demand funds outlined in the Estop-pel Letter, PNC Bank released its lien and terminated the credit line.
*658 Within seven months of the release and termination, the borrowers followed up with a one-count complaint against PNC Bank seeking damages for breach of contract. The borrowers sought return of the $153,048.28 “90 Day Written Notice” charge plus interest, court costs and attorney’s fees. In its answer and affirmative defenses, PNC Bank denied that it breached the Agreement and asserted the following affirmative defenses: (i) waiver and estoppel; (ii) accord and satisfaction; and (iii) anticipatory breach. PNC Bank did not assert a counterclaim in its initial answer.
The borrowers moved for summary judgment and PNC Bank filed a cross-motion for summary judgment. After a hearing on both motions, the trial court entered an order granting the borrowers’ motion for summary judgment, denying PNC Bank’s motion for summary judgment, and ordering PNC Bank to pay $193,050.49 to the borrowers ($153,048.28 for the “90 Day Written Notice” payment it had previously received and $40,002.21 as prejudgment interest).
PNC Bank filed a “Motion for Rehearing or, in the Alternative, Motion for Leave to File Counterclaim.” PNC Bank argued that prior to the trial court’s granting the borrowers’ motion for summary judgment, PNC Bank had suffered no damages as a result of the borrowers’ breach. However, PNC Bank argued, because the trial court ordered PNC Bank to return the disputed funds, PNC Bank then had a viable claim for breach of contract against the borrowers for not providing them with ninety days’ written notice prior to terminating the Agreement. The trial court denied PNC Bank’s motion and PNC Bank appealed.
Review of an order granting summary judgment is de novo. Gomez v. Fradin, 41 So.3d 1068, 1070 (Fla. 4th DCA 2010). “Summary judgment is proper, if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law.” Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000).
Furthermore, “[construction of a contract is a question of law which an appellate court may consider de novo provided that the language is clear and unambiguous and free of conflicting inferences.” Miller v. Kase, 789 So.2d 1095, 1097 (Fla. 4th DCA 2001). “The contract should be reviewed as a whole and all language given effect, and where the language is clear and unambiguous, the contract should be enforced as it reads.” Leisure Resorts, Inc. v. City of West Palm Beach, 864 So.2d 1163, 1166 (Fla. 4th DCA 2003). “[An] interpretation which gives a reasonable meaning to all provisions of a contract is preferred to one which leaves a part useless or inexplicable.” Premier Ins. Co. v. Adams, 632 So.2d 1054, 1057 (Fla. 5th DCA 1994).
Contrary to the trial court’s holding, PNC Bank did not breach the Agreement. Paragraph 13.1 of the Agreement set forth the borrowers’ sole available method to terminate the contract prior to the end of its two-year term. The early termination requirements were unambiguous: “Borrowers may terminate this Agreement at any time upon ninety (90) days prior written notice upon payment in full of the Obligations.” Thus, the borrowers had two plainly simple requirements to meet to entitle them to terminate early: 1) provide PNC Bank with ninety days’ written notice prior to the planned early termination date, and 2) pay all obligations in full by the early termination date. Pursuant to paragraph 13.2 of the Agreement, PNC Bank was not obligated to release its lien on the borrowers’ collateral “unless *659 and until this Agreement shall have been terminated in accordance with its terms and all Obligations paid in full.”
There is no dispute that the borrowers failed to provide the required ninety days’ written notice prior to early terminating the Agreement. Accordingly, the Agreement was not terminated “in accordance with its terms.” As a result, PNC Bank was under no obligation to release its lien on the borrowers’ collateral until the two-year term ended or on the ninety-first day after receiving the required early termination notice from the borrowers. Since PNC Bank was not obligated to release its lien, PNC Bank could not have breached the Agreement by refusing to do so. See Miller v. Nifakos, 655 So.2d 192, 193 (Fla. 4th DCA 1995) (“To establish a breach of contract, a party must show the existence of a contract, a breach thereof, and damages.”). The borrowers’ only claim against PNC Bank sounded in breach of the credit Agreement. As such, the trial court erred in granting summary judgment in favor of the borrowers because, based on the undisputed facts in this case, PNC Bank did not breach the Agreement.
The borrowers’ breach of contract claim focused on the “early termination fee” which was also included in paragraph 13.1 of the Agreement. The borrowers claimed, and apparently the trial court agreed, that this “early termination fee” was essentially a liquidated damages provision which specified the total amount due to compensate PNC Bank if the borrowers terminated the Agreement early — regardless of whether the required ninety day notice was provided. Such a contractual interpretation, however, would give no effect to the “ninety (90) days prior written notice” language in the same paragraph. Instead, “an interpretation which gives a reasonable meaning to all provisions of a contract is preferred to one which leaves a part useless or inexplicable.” Premier Ins. Co., 632 So.2d at 1057. Therefore, the more reasonable interpretation of the Agreement is that the borrowers could only terminate the contract early by 1) providing the ninety days’ prior written notice and 2) paying all obligations (including the early termination fee).
In essence, PNC Bank’s Estoppel Letter was its unilateral offer to the borrowers whereby it agreed to immediately release the collateral even without the required ninety day early termination notice. The borrowers were not obligated to accept PNC Bank’s offer and instead they simply could have waited for ninety days.[2]
PNC Bank has also appealed the trial court’s denial of its motion to amend its answer to include a counterclaim for breach of contract. PNC Bank argued that prior to the trial court’s granting the borrowers’ motion for summary judgment and essentially ordering the borrowers to return the “90 Day Written Notice” charge (by entering a final monetary judgment in a like amount), PNC Bank had suffered no damages as a result of the borrowers’ breach. Once PNC Bank was ordered to make the payment, however, PNC Bank incurred- damages as a result of the borrowers’ alleged breach and therefore should have been permitted to amend its complaint.
*660 The standard of review of a trial court’s denial of leave to amend to add a counterclaim is abuse of discretion. Dimick v. Ray, 774 So.2d 830, 882 (Fla. 4th DCA 2000). A trial court’s refusal to allow amendment, however, generally constitutes an abuse of discretion “unless the privilege has been abused, there is prejudice to the opposing party, or amendment would be futile.” Fields v. Klein, 946 So.2d 119, 121 (Fla. 4th DCA 2007). “A party may, with leave of court, amend a pleading at or even after a hearing and ruling on a motion for summary judgment.” Yun Enters., Ltd. v. Graziani, 840 So.2d 420, 422 (Fla. 5th DCA 2003).
Here, PNC Bank did not abuse the privilege to amend as this was its first motion to amend. Furthermore, allowing the amendment, would not clearly prejudice the borrowers as the counterclaim merely restated issues which were already present in the case. See Newman v. State Farm Mut. Auto. Ins. Co., 858 So.2d 1205, 1206 (Fla. 4th DCA 2003). Finally, it does not appear from the record that PNC Bank’s amendment would be futile as it was legally sufficient to state a counterclaim for breach of contract. See Quality Roof Servs., Inc. v. Intervest Nat’l Bank, 21 So.3d 883, 885 (Fla. 4th DCA 2009) (“A proposed amendment is futile if it is insufficiently pled, or is ‘insufficient as a matter of law.’ ” (quoting Burger King Corp. v. Weaver, 169 F.3d 1310, 1320 (11th Cir. 1999))). Thus, the trial court should have permitted PNC Bank to amend its pleadings.
Because the matter came before the trial court on cross-motions for summary judgment, we reverse the final summary judgment entered in favor of the borrowers and remand with instructions to the trial court to enter summary judgment in favor of PNC Bank. If PNC Bank believes it is necessary, the trial court shall grant its motion for leave to amend its answer. If the borrowers believe further litigation is required — even in light of our holding — they too should be permitted to amend their pleadings.

Reversed and remanded for further proceedings consistent with this opinion.

HAZOURI and LEVINE, JJ., concur.

. It was PNC Bank's position that $153,048.28 represented the amount of interest that the borrowers would have paid to the bank if the credit line had remained open for an additional ninety days. That is, had PNC Bank received the ninety day termination notice to which it was entitled, it would have been entitled to $153,048.28 in interest.

. The borrowers have acknowledged that they engaged in a cost-benefit analysis in conjunction with their business decision to terminate the credit line with one-day notice to PNC Bank. The borrowers apparently concluded that the rate of interest offered by HSBC Bank made immediate refinancing worth the penalties associated with breaching the Agreement. Whether the $153,048.28 charge was warranted or was otherwise a fair estimation of the loss PNC Bank incurred by not receiving the contractually required ninety days’ notice is perhaps another issue but is not part of this appeal.