DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**HIGH DEFINITION MOBILE MRI, INC.,**
Appellant,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
Appellee.

No. 4D21-192

[June 2, 2021]

Appeal from the County Court for the Seventeenth Judicial Circuit Court; Nina Di Pietro, Judge; L.T. Case Nos. COCE16-021051 and CACE19-00949.

John C. Daly, Jr., Matthew C. Barber, and Christina Kalin of Daly & Barber, P.A., Plantation, for appellant.

Nancy W. Gregoire of Birnbaum, Lippman & Gregoire, PLLC, Fort Lauderdale, and Michael S. Walsh and Walid O. Mabrouk of Kubicki Draper, Fort Lauderdale, for appellee.

GROSS, J.

We affirm a summary final judgment in favor of the insurer. The trial court properly determined that an endorsement became a part of the policy and permitted the insurer to limit reimbursement based on a schedule of maximum charges.

### *The Policy and the 6126LS Endorsement*

State Farm issued a policy of automobile insurance to the insureds, Aliquais and Susette Louima, in December 2009. Between December 2009 and December 2012, the coverages elected by the insureds never changed.

The Declarations Page of the Policy states that "[y]our policy consists of this declarations page, the policy booklet – form 9910.7, and any endorsements that apply, including those issued to you with any subsequent renewal notice."

According to State Farm's business records, when the Policy was renewed in November 2012, the Policy added the 6126LS Amendatory Endorsement (the "Endorsement") regarding PIP benefits. The Endorsement states in relevant part:

**NO-FAULT – COVERAGE P**

The following is added to No-Fault – Coverage P:

We will limit reimbursement of medical expenses to 80 percent of a properly billed reasonable charge, but in no event will we pay more than 80 percent of the following schedule of maximum charges:

   * * *

f. For all other medical services, supplies, and care, 200 percent of the allowable amount under the participating physicians fee schedule of Medicare Part B. However, if such services, supplies, or care is not reimbursable under Medicare Part B, then we will limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13, Florida Statutes . . . .

The Endorsement was approved by the Office of Insurance Regulation in June 2012.

The Declarations Page does not list the Endorsement, as the Declarations Page was issued with the original Policy in 2009, before the Endorsement was added. State Farm's business practice is "to print a new Declarations Page only when a policy issuance transaction such as a change of coverage occurs."

### *The Accident and State Farm's Payment to the Provider*

In December 2012, while the Policy was in effect, Ms. Louima was involved in an automobile accident. Following the accident, Ms. Louima received a single MRI from High Definition Mobile MRI ("the Provider"), for which it billed State Farm $1,900. Relying on the Policy and the statutory schedule of maximum charges, State Farm approved $1,174.84 and paid the Provider 80% of that amount, or $939.87.

### The Lawsuit - Pleadings

The Provider, as assignee of Ms. Louima, later filed suit against State Farm, alleging that State Farm breached the Policy by failing to pay the full amount of benefits the Provider was owed. State Farm answered and asserted affirmative defenses, including the defense that State Farm properly paid the reasonable amounts owed pursuant to the Policy and Endorsement, which unambiguously provided notice of the schedule of maximum charges.

### State Farm's Motion for Summary Judgment

State Farm moved for summary judgment, arguing that the language of the Endorsement allowed it to limit reimbursement based on the application of the schedule of maximum charges. State Farm attached various documents to its motion, including the Policy, the Endorsement, and a Certified Policy Record that purported to authenticate the Policy documents. However, State Farm did not attach any affidavits to its motion.

### The Affidavit in Support of Summary Judgment

The trial court denied State Farm's motion without prejudice because there was no affidavit that authenticated the documents that State Farm had filed in support of its motion. Following the trial court's order, State Farm filed the affidavit of Dave Theodore in support of its motion for summary judgment. Mr. Theodore attested that:

- He was "the claims specialist with the most knowledge regarding this claim."

- He had "personal knowledge . . . of the matters contained in this affidavit by a review of scanned copies of the original documents contained in the file and kept by State Farm . . . in the ordinary course and scope of its business."

- The documents were "maintained in the course of the regularly conducted business of State Farm and were created at or near the time of the facts contained herein by a person with knowledge of the same."

- Based on his personal review of all relevant policy and claim documents, he could personally confirm that the Policy included "the 6126LS Amendatory Endorsement."

3

• The Policy and the Endorsement were in effect as of November 21, 2012, and remained in effect on the date of the accident.

• Attached to the affidavit was a certified copy of the Policy, including the Endorsement. These were "true and correct copies maintained in the usual and ordinary course of business."

### Summary Judgment and Final Judgment

After holding another hearing, the trial court granted State Farm's motion for summary judgment. Pursuant to its ruling, the trial court entered final judgment for State Farm. The record reflects that the trial court entered the final judgment before the Provider filed a Notice of Filing Argument in Opposition to Defendant's Motion for Summary Judgment.

### The Provider's Arguments

On appeal, the Provider argues that: (1) State Farm's Policy and renewal notice violated the plain language of sections 627.413, 627.421, and 627.736(5)(a)5., Florida Statutes, "by not specifying the form numbers and applicable endorsements," "by not clearly identifying to the insured the applicable . . . endorsements on the declarations page," and "by failing to notify[] its insured of the changes in coverage"; (2) even assuming the Policy and Declarations Page intended to incorporate the Endorsement, the Policy would be ambiguous and must be construed against the drafter; and (3) the claims representative's affidavit was not based on personal knowledge, was self-serving, and was conclusory, and even so, State Farm's evidence supported final judgment in favor of the Provider.

### Standard of Review

The standard of review of a summary judgment is de novo. *Gomez v. Fradin*, 41 So. 3d 1068, 1071 (Fla. 4th DCA 2010). Likewise, a trial court's interpretation of the language of a contract or statute is reviewed de novo. *Valencia Reserve Homeowners Ass'n v. Boynton Beach Assocs., XIX, LLLP*, 278 So. 3d 714, 716 (Fla. 4th DCA 2019).

### Did the Endorsement Become Part of the Policy?

Section 627.402(1), Florida Statutes (2012), defines a "policy" as "a written contract of insurance or written agreement for or effecting

4

insurance, or the certificate thereof, by whatever name called, and includes all clauses, riders, endorsements, and papers which are a part thereof."

Under section 627.4143(2), the outline of coverage for a private passenger motor vehicle insurance policy shall contain, among other things:

> (a) A brief description of the principal benefits and coverage provided in the policy, broken down by each class or type of coverage provided under the policy for which a premium is charged, and itemization of the applicable premium.
>
> (b) A summary statement of the principal exclusions and limitations or reductions contained in the policy by class or type, including, but not limited to, deductibles, coinsurance, and any other limitations or reductions.

§ 627.4143(2)(a)–(b), Fla. Stat. (2012).

Section 627.413(1) governs the contents of insurance policies, stating in relevant part:

> (1) Every policy shall specify:
>
> (a) The names of the parties to the contract.
>
> (b) The subject of the insurance.
>
> (c) The risks insured against.
>
> (d) The time when the insurance thereunder takes effect and the period during which the insurance is to continue.
>
> (e) The premium.
>
> (f) The conditions pertaining to the insurance.
>
> (g) ***The form numbers and edition dates or numeric code indicating edition dates, when such code has been supplied to the office, of all endorsements attached to a policy***. This requirement applies to life insurance policies and health insurance policies only at the time of original issue.

§ 627.413(1), Fla. Stat. (2012) (emphasis added).

Section 627.421, in turn, governs delivery of an insurance policy. Subsection (3) states in pertinent part:

> (3) Any automobile liability or physical damage policy shall contain on the front page a summary of major coverages, conditions, exclusions, and limitations contained in that policy. Any such summary shall state that the issued policy should be referred to for the actual contractual governing provisions. ***The company may, in lieu of the summary, provide a readable policy***.

§ 627.421(3), Fla. Stat. (2012) (emphasis added).

Finally, section 627.736(5)(a)5., Florida Statutes (2013), states that "[e]ffective July 1, 2012, an insurer may limit payment as authorized by this paragraph only if the insurance policy includes a notice at the time of issuance or renewal that the insurer may limit payment pursuant to the schedule of charges specified in this paragraph."[1] However, "[a] policy form approved by the office satisfies this requirement." *Id.*

Here, the Endorsement satisfied all statutory requirements for becoming part of the Policy.

First, State Farm satisfied section 627.413(1)(g) because the Policy specified the form numbers and edition dates or numeric codes of all endorsements to the Policy, including the Endorsement at issue here, which was clearly labeled as the "6126LS Amendatory Endorsement" and dated as the 2012 edition.

Second, State Farm did not violate anything in section 627.421. State Farm complied with section 627.421(3) because, at a minimum, it provided a "readable policy." Moreover, section 627.421(4)(e) does not apply in this case.[2]

---

[1] This provision first appeared in the 2013 statutes, but the Legislature gave it an effective date of July 1, 2012.

[2] Effective July 1, 2013, the Legislature added subsection (4) to section 627.421, which states in relevant part: "(4) . . . If the insurer elects to post insurance policies and endorsements on its Internet website in lieu of mailing or delivery to insureds, the insurer must comply with the following: . . . (e) On each declarations page issued to the insured, the insurer must clearly identify the exact policy form and endorsement form purchased by the insured." However, this language was

Third, the Policy satisfied section 627.736(5)(a)5. because the Endorsement provided notice at the time of renewal in November 2012 that State Farm was limiting payment to the schedule of maximum charges, and the Endorsement was approved by the Office of Insurance Regulation.

The Provider's argument boils down to a claim that "State Farm was required to provide all of the applicable endorsements on its declarations page and unequivocally failed to do so in this case." However, nothing in Chapter 627 required State Farm to issue a new Declarations Page when it issued the Endorsement.

To the contrary, the definition of "policy" includes "all . . . endorsements . . . which are a part thereof." § 627.402(1), Fla. Stat. (2012). This definition does not require that an endorsement be listed on the Declarations Page. Likewise, section 627.413(1) merely requires that a policy shall specify "[t]he form numbers and edition dates . . . of all endorsements attached to a policy," but the statute does not require this specification to occur on the Declarations Page itself. Furthermore, the Endorsement was not a change in "coverage"—meaning the "class or type" of insurance "provided under the policy for which a premium is charged"—and thus did not require the issuance of a new Declarations Page.

In short, as the trial court reasoned, an endorsement can become part of a policy even if it is not listed on the Declarations Page itself, particularly where, as here, the endorsement is issued as part of a policy renewal and the coverages have not changed.

Finally, State Farm's evidence was sufficient to establish that the Endorsement was part of the Policy. The claims representative expressly attested that the Policy included the Endorsement, and that "the policy and ALL endorsements including the 6126LS endorsement were in effect as of 11/21/12 and were in effect as of the date of loss at issue 12/20/12." The Provider offered no evidence to contradict the affidavit.

As the trial court ruled, the Provider needed to raise the lack-of-notice claim with evidence—not just argument. For example, the Provider offered no evidence that the Endorsement was not issued with the November 2012 renewal notice or that the insureds were not put on notice of the

added to the statute *after* the Policy in this case was issued. Thus, the Provider's reliance upon section 627.421(4)(e) is misplaced. Furthermore, there is no evidence in the record as to whether State Farm posted its policies on its website in lieu of mailing or delivery.

Endorsement. Additionally, the only reasonable inference from the evidence is that a renewal notice must have issued. As State Farm argues: "The Policy would not have been in force in December 2012 if the premiums had not been paid, and the premiums could not be paid in the absence of a renewal notice, because that is the vehicle that states the premium to be paid." Absent any contrary evidence, the claims representative's affidavit established that the Endorsement was in effect at the time of the November 2012 renewal. Thus, the fact that the renewal notice itself is not in the record is immaterial, as the affidavit was sufficient to establish that the Endorsement was part of the Policy.

In sum, State Farm complied with the relevant statutes in issuing the Endorsement. Furthermore, absent any evidence from the Provider to the contrary, the claims representative's affidavit established that the Endorsement became part of the Policy when it was renewed in November 2012.

### *The Claim that the Endorsement Rendered the Policy Ambiguous Was Not Preserved for Appellate Review*

"In order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved." *Sunset Harbour Condo. Ass'n v. Robbins*, 914 So. 2d 925, 928 (Fla. 2005) (quoting *Tillman v. State*, 471 So. 2d 32, 35 (Fla. 1985)). Additionally, "a party must obtain a ruling from the trial court in order to preserve an issue for appellate review." *Carratelli v. State*, 832 So. 2d 850, 856 (Fla. 4th DCA 2002).

Here, the Provider did not preserve the argument that the Endorsement rendered the Policy ambiguous. The trial court never considered this argument. Instead, the Provider raised this argument for the first time in a Notice of Filing Argument in Opposition to Defendant's Motion for Summary Judgment, filed *after* the trial court had already granted the motion for summary judgment and entered a final judgment. Also, this argument is inconsistent with the Provider's concession, made at the first summary judgment hearing, that the language of the Endorsement provided legally sufficient notice to limit payment to the fee schedule.

### *The Legal Sufficiency of the Theodore Affidavit Was Not Preserved for Appellate Review*

A challenge to the sufficiency of an affidavit in support of summary judgment is not preserved for appellate review in the absence of a timely

and proper objection in the lower court. *See Merlien v. JM Family Enters., Inc.,* 301 So. 3d 1, 2 n.1 (Fla. 4th DCA 2020); *cf. also Cadle Co. v. G & G Assocs.,* 737 So. 2d 1136, 1140 (Fla. 4th DCA 1999) (noting that defects in the form of an affidavit "can be waived if not timely raised in the trial court").

The Provider never argued below that the affidavit was conclusory, self-serving, or unsupported by personal knowledge. Thus, because the Provider never challenged the sufficiency of the affidavit below, this argument is unpreserved and cannot be raised for the first time on appeal.

*Affirmed.*

GERBER and KLINGENSMITH, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

9