DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JOHN G. MCGREGOR,** et al.,
Appellants,

v.

**FOWLER WHITE BURNETT, P.A.,** and **RITTER, ZARETSKY, LIEBER & JAIME, LLP,**
Appellees.

No. 4D20-2684

[December 1, 2021]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Scott R. Kerner, Judge; L.T. Case No. 502006CA011826XXXMB AA.

Mandell Sundarsingh of Sundarsingh Law, P.L., Palm Beach Gardens, for appellants.

Valerie Shea and Rodney Janis of Goldberg Segalla, LLP, West Palm Beach, for appellee Ritter, Zaretsky, Lieber & Jaime, LLP.

Nicole K. Atkinson and Amy S.L. Terwilleger of Gunster, Yoakley & Stewart, P.A., West Palm Beach, for appellee Fowler White Burnett, P.A.

GROSS, J.

This case involves the interplay between the proceedings supplementary statute (section 56.29, Florida Statutes) and the Uniform Fraudulent Transfer Act (chapter 726, Florida Statutes). We hold that appellants' fraudulent transfer claims brought under the ambit of section 56.29 were subject to the time limitations of chapter 726, so they were time barred by the application of section 726.110, Florida Statutes.

### *Background and the Alleged Fraudulent Transfers*[1]

---

[1] This statement of facts is limited to the facts relevant to the statute of limitations issue, the ground upon which the trial court entered summary judgment. The trial court never reached the issue of fault, so we do not address the parties'

Appellants[2] were the Plaintiffs in a lawsuit in the circuit court. In that lawsuit, the trial court entered a consent final judgment against judgment debtor Merco Group of the Palm Beaches, Inc. ("Merco"), awarding the Plaintiffs over $1.9 million in damages arising out of Merco's failure to return deposits for the purchase of units in a failed condominium project.

After the entry of judgment, in June 2008, Merco received a refund check from Palm Beach County in the amount of $781,205.76, which represented a portion of the impact fee originally paid to develop the project. Later that month, instead of depositing the check into one of its own bank accounts, Merco instructed Fowler White Burnett, P.A. ("Fowler White") to deposit the check into that law firm's trust account as escrow funds. Thereafter, Fowler White disbursed the funds from its trust account according to Merco's instructions. The disbursements included payments of the firm's own invoices. By August 2009, the funds were completely transferred out of Fowler White's trust account.

The largest transfer from Fowler White occurred in April 2009. In that transaction, Fowler White wired $511,267.85 to Ritter, Zaretsky, Lieber & Jaime, LLC ("Ritter Zaretsky") pursuant to Merco's instructions. Ritter Zaretsky later disbursed these funds.

Around 2013, the Plaintiffs learned of the refund check to Merco. The Plaintiffs then sought discovery from Fowler White and Attorney Louis Zaretsky concerning what happened to the funds. Merco objected to the discovery on the basis of attorney-client privilege.

Following a hearing held pursuant to our decision in *Merco Group of the Palm Beaches, Inc. v. McGregor*, 162 So. 3d 49 (Fla. 4th DCA 2014), the trial court ordered Fowler White to produce documents concerning the refund payment. The trial court stated that the record contained "prima facie evidence that [Merco] used its attorney/client relationship with [Fowler White] to promote an intended or actual fraud on the Plaintiffs and upon the Court in an effort to conceal assets that would have been discoverable and subject to disclosure." Merco agreed to produce the subject documents.

---

factual assertions regarding the culpability (or lack thereof) of Fowler White and Ritter Zaretsky with respect to the transfers.

[2] Appellants include, among others, John G. McGregor, David Ghysles, Dr. David Saraga, Harjas Chatwal, and Maria Mezzomo. Appellants' attorney in this appeal withdrew as counsel for certain other appellants.

2

On June 23, 2015, Fowler White produced the relevant documents to the Plaintiffs' counsel. Among these documents were: (1) a trust ledger showing the transfers in and out of Fowler White's trust account on behalf of Merco; and (2) a letter from Merco directing Fowler White to wire $511,267.85 to Ritter Zaretsky.

### *Proceedings Supplementary*

On February 27, 2019, the Plaintiffs moved to commence proceedings supplementary, seeking entry of judgments against Fowler White and Ritter Zaretsky pursuant to sections 56.29(1), (2), (3)(b), and (6), Florida Statutes. The Plaintiffs alleged that: (1) Merco's deposit of the $781,205.76 refund check into Fowler White's trust account was a fraudulent transfer made to hinder, delay, and defraud the Plaintiffs, and (2) Fowler White's transfer of $511,267.85 to Ritter Zaretsky was a fraudulent transfer made to hinder, delay, and defraud the Plaintiffs. The Plaintiffs sought a judgment against Fowler White in the amount of $781,205.76, and against Ritter Zaretsky in the amount of $511,267.85.

The trial court entered notices to appear directed to Fowler White and Ritter Zaretsky.

Fowler White and Ritter Zaretsky each filed defenses to the notices to appear, including the assertion that the fraudulent transfer claims were barred by the statute of limitations.

### *Summary Judgment Motions and Orders*

The Plaintiffs moved for partial summary judgment against Fowler White and Ritter Zaretsky, arguing that the statute of limitations under the Florida Uniform Fraudulent Transfer Act ("FUFTA" or "UFTA") did not apply to this proceeding.

Fowler White moved for summary judgment, arguing that the Plaintiffs' fraudulent transfer claims were barred by chapter 726's statute of limitations because the claims were not brought within four years of the transfers or within one year after the transfers reasonably could have been discovered. Fowler White argued that section 56.29(3)(b) did not provide a basis for an award of money damages and that the "Plaintiffs must necessarily proceed under subsection (9) and remain subject to Chapter 726, including its statute of limitations." Fowler White contended that the Plaintiffs' claims—brought solely through a Notice to Appear—were

3

procedurally improper because the Plaintiffs were required to file a supplemental complaint pursuant to section 56.29(9).

Ritter Zaretsky similarly moved for summary judgment based upon the statute of limitations.

In two separate orders, the trial court granted summary judgment in favor of Fowler White and Ritter Zaretsky, prompting this appeal.

### *Standard of Review*

A summary judgment is reviewed de novo. *Gomez v. Fradin*, 41 So. 3d 1068, 1071 (Fla. 4th DCA 2010). Likewise, a trial court's interpretation of a statute is reviewed de novo. *Parker v. Parker*, 185 So. 3d 616, 618 (Fla. 4th DCA 2016).

### *The Trial Court Properly Applied Section 56.29(9) and the Statute of Repose in Section 726.110, Florida Statutes*

*A. The Plaintiffs' Arguments*

On appeal, the Plaintiffs argue that the trial court erred in ruling that their fraudulent transfer claims could be pursued only under section 56.29(9) and were thus subject to the limitations periods in section 726.110. The Plaintiffs contend that they could proceed on their fraudulent transfer claims pursuant to sections 56.29(2), (3)(b), and (6), independent of section 56.29(9).

According to the Plaintiffs, the trial court improperly construed the term "personal property" in section 56.29(3)(b) to mean only personal property currently in the possession of a transferee that was capable of being immediately seized by the Sheriff for execution. Furthermore, the Plaintiffs argue, section 56.29(6) expands the relief that may be afforded to a judgment creditor under section 56.29(3)(b) by allowing the entry of money judgments against any person to whom a notice to appear has been directed, irrespective of whether such person retained the property.

The Plaintiffs maintain that the legislature's use of the word "section" in subsection (6) makes it clear that the various forms of relief in subsection (6) apply to the entirety of section 56.29, including subsection (3)(b). Finally, the Plaintiffs argue that the inclusion of chapter 726 in section 56.29(9) impliedly excludes chapter 726 from the other subsections of section 56.29.

## B. Principles of Statutory Interpretation

"The first step in determining the meaning of a statute is to examine its plain language." *Jones v. State*, 966 So. 2d 319, 326 (Fla. 2007). Under the supremacy-of-text principle adopted by the Florida Supreme Court, "[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." *Advisory Op. to Governor re Implementation of Amend. 4, The Voting Restoration Amend.*, 288 So. 3d 1070, 1078 (Fla. 2020) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012)). "Where possible, courts must give full effect to *all* statutory provisions and construe related statutory provisions in harmony with one another." *Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So. 2d 452, 455 (Fla. 1992).

If the meaning of the statute "is clear and unambiguous, courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent." *Daniels v. Fla. Dep't of Health*, 898 So. 2d 61, 64 (Fla. 2005). "[T]he statute's plain and ordinary meaning must control, unless this leads to an unreasonable result or a result clearly contrary to legislative intent." *Id.*

## C. Proceedings Supplementary Under Section 56.29

A proceeding supplementary is a post-judgment proceeding that allows a judgment creditor "to ferret out what assets the judgment debtor may have or what property of his others may be holding for him, or may have received from him to defeat the collection of the lien or claim, that might be subject to the execution." *Young v. McKenzie*, 46 So. 2d 184, 185 (Fla. 1950).

Section 56.29, Florida Statutes, governs proceedings supplementary and was last amended in 2016. *See* Ch. 2016-33, § 18, Laws of Fla. (eff. July 1, 2016).

"The statute governing proceedings supplementary is equitable in nature and should be liberally construed." *Longo v. Associated Limousine Servs., Inc.*, 236 So. 3d 1115, 1118 (Fla. 4th DCA 2018) (citation and internal quotation marks omitted). The purpose of the statute is to "enable speedy and direct proceedings in the same court in which the judgment was recovered to better afford to a judgment creditor the most complete relief possible in satisfying the judgment." *Id.* (citation omitted). Proceedings under section 56.29 are not independent causes of action, but rather are post-judgment proceedings that permit a creditor to effectuate

an existing judgment lien.  *Uoweit, LLC v. Fleming*, 300 So. 3d 1201, 1203 (Fla. 4th DCA 2020).

The current version of section 56.29 contains the following provisions relevant to this appeal.

Section 56.29(2) allows a judgment creditor to pursue any property of the judgment debtor not exempt from execution in the hands of any person or any property, debt, or other obligation due to the judgment debtor which may be applied toward the satisfaction of the judgment:

> (2) The judgment creditor shall, in the motion described in subsection (1) or in a supplemental affidavit, ***describe any property of the judgment debtor not exempt from execution in the hands of any person or any property, debt, or other obligation due to the judgment debtor which may be applied toward the satisfaction of the judgment***.  Upon filing of the motion and affidavits that property of the judgment debtor, or any debt, or other obligation due to the judgment debtor in the custody or control of any other person may be applied to satisfy the judgment, then the court shall issue a Notice to Appear. . . . ***The Notice to Appear must describe with reasonable particularity the property, debt, or other obligation that may be available to satisfy the judgment*** . . . .

§ 56.29(2), Fla. Stat. (2018) (emphasis added).  This court has stated that section 56.29(2) "is well-suited to fraudulent transfer cases . . . ." *Longo*, 236 So. 3d at 1120.  However, in context, the *Longo* court was merely noting that the description requirement of section 56.29(2) made more sense in fraudulent transfer cases than in alter ego cases.  *Id.* at 1120–21.

Section 56.29(3)(b) allows a court to void a judgment debtor's fraudulent transfer of personal property and direct the sheriff to take the property to satisfy the execution:

> (3)(b) When any gift, transfer, assignment or other conveyance of personal property has been made or contrived by the judgment debtor to delay, hinder, or defraud creditors, ***the court shall order the gift, transfer, assignment or other conveyance to be void and direct the sheriff to take the property to satisfy the execution***.  This does not authorize seizure of property exempted from levy and sale under execution or property which has passed to a bona fide

6

purchaser for value and without notice. Any person aggrieved by the levy or Notice to Appear may proceed under ss. 56.16-56.20.

§ 56.29(3)(b), Fla. Stat. (2018) (emphasis added).

We agree with the analysis of a federal bankruptcy court that section 56.29(3)(b) does not provide for an award of money damages and that relief is limited to avoiding transfers of personal property in situations where the property may be seized to satisfy the execution:

> Subsection (3)(b) provides a narrowly tailored substantive claim based in fraudulent transfer, independent of Florida's primary fraudulent transfer statute contained in chapter 726. Where a judgment debtor has transferred personal property in an effort to delay, hinder, or defraud creditors, the court may declare the transfer void and direct the sheriff to take the property. ***Subsection (3)(b) does not provide any basis for an award of money damages. The relief is limited to avoiding transfers of personal property, making the property available for satisfaction of the judgment.*** Based on the text of the statute, ***the personal property must be the same property that the judgment debtor transferred and must be something identifiable that the sheriff may seize.***

*In re British Am. Ins. Co. (BAICO)*, 607 B.R. 753, 757 (Bankr. S.D. Fla. 2019) (emphasis added) (footnote omitted).

Section 56.29(6) allows the court to enter any "orders, judgments, or writs required to carry out the purpose of this section, . . . including entry of money judgments as provided in [sections] 56.16-56.19 against any person to whom a Notice to Appear has been directed . . . irrespective of whether such person has retained the property":

> (6) The court may order any property of the judgment debtor, not exempt from execution, or any property, debt, or other obligation due to the judgment debtor, in the hands of or under the control of any person subject to the Notice to Appear, to be levied upon and applied toward the satisfaction of the judgment debt. ***The court may enter any orders, judgments, or writs required to carry out the purpose of this section***, including those orders necessary or proper to subject property or property rights of any judgment debtor to

execution, ***and including entry of money judgments as provided in ss. 56.16-56.19 against any person to whom a Notice to Appear has been directed*** and over whom the court obtained personal jurisdiction ***irrespective of whether such person has retained the property***, subject to applicable principles of equity, and in accordance with chapters 76 and 77 and all applicable rules of civil procedure. Sections 56.16-56.20 apply to any order issued under this subsection.

§ 56.29(6), Fla. Stat. (2018) (emphasis added). "By its terms, section 56.29(6) grants a trial court broad authority to enter 'any' orders necessary to carry out the purpose of the statute[.]" *Buechel v. Shim*, 46 Fla. L. Weekly D265 (Fla. 5th DCA Jan. 29, 2021), *rev. granted*, SC21-249, 2021 WL 2155087 (Fla. May 27, 2021).

Section 56.29(9) permits a court to entertain claims brought under chapter 726 and to enter "a money judgment against any initial or subsequent transferee," but such claims must be "initiated by a supplemental complaint" and are "subject to" chapter 726:

(9) The court may entertain claims concerning the judgment debtor's assets brought under chapter 726 and enter any order or judgment, including a money judgment against any initial or subsequent transferee, in connection therewith, irrespective of whether the transferee has retained the property. Claims under chapter 726 brought under this section ***shall be initiated by a supplemental complaint*** and served as provided by the rules of civil procedure, and ***the claims under the supplemental complaint are subject to chapter 726*** and the rules of civil procedure. The clerk of the court shall docket a supplemental proceeding under the same case number assigned to the original complaint filed by the judgment creditor . . . .

§ 56.29(9), Fla. Stat. (2018) (emphasis added).

Chapter 726 is Florida's enactment of the Uniform Fraudulent Transfer Act. *See* § 726.101, Fla. Stat. (2018). Section 726.110, Florida Statutes, sets forth the following limitations periods for fraudulent transfer claims brought under chapter 726:

8

A cause of action with respect to a fraudulent transfer or obligation under ss. 726.101-726.112 is extinguished unless action is brought:

(1) Under s. 726.105(1)(a), within 4 years after the transfer was made or the obligation was incurred or, if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant;

(2) Under s. 726.105(1)(b) or s. 726.106(1), within 4 years after the transfer was made or the obligation was incurred; or

(3) Under s. 726.106(2), within 1 year after the transfer was made or the obligation was incurred.

§ 726.110(1)–(3), Fla. Stat. (2018).

Under the pre-2014 version of section 56.29, a judgment creditor could bring fraudulent transfer claims in proceedings supplementary for the life of the judgment, notwithstanding the UFTA's much shorter limitations period. *See Biel Reo, LLC v. Barefoot Cottages Dev. Co.*, 156 So. 3d 506, 507–08, 511 (Fla. 1st DCA 2014). "But the court in *Biel Reo, LLC* interpreted the 2012 version of the statute, and the legislature has since amended it." *Uoweit*, 300 So. 3d at 1204.

In 2014, "for the first time, the Florida legislature specifically incorporated 'the provisions of chapter 726 and applicable rules of civil procedure' in connection with 'claims concerning the judgment debtor's assets brought under chapter 726.'" *BAICO*, 607 B.R. at 760 (quoting § 56.29(5), Fla. Stat. (2014)). The 2014 amendment made the following changes to then-subsection (5):

(5) The ***court*** ~~judge~~ may order any property of the judgment debtor, not exempt from execution, in the hands of any person***,*** or ***any property, debt, or other obligation*** due to the judgment debtor***,*** to be applied toward the satisfaction of the judgment debt. ***The court may entertain claims concerning the judgment debtor's assets brought under chapter 726 and enter any order or judgment, including a money judgment against any initial or subsequent transferee, in connection therewith, irrespective of whether the transferee has retained the property***. ***Claims under chapter 726 are subject to the provisions of chapter 726 and applicable rules of civil procedure***.

Ch. 2014–182, § 17, Laws of Fla. (added text in bold and italicized; deleted text in strikethrough).  The legislature also made the following changes to then-subsection (9):

> (9) The court may enter any orders, **_judgments, or writs_** required to carry out the purpose of this section, **_including those orders necessary or proper_** to subject property or property rights of any **_judgment debtor_** ~~defendant~~ to execution, **_and including entry of money judgments against any impleaded defendant irrespective of whether such defendant has retained the property, subject to ss. 56.18 and 56.19 and applicable principles of equity, and in accordance with chapters 76 and 77 and applicable rules of civil procedure_**.

*Id.* (added text in bold and italicized; deleted text in strikethrough).

Finally, the legislature noted that the 2014 amendments to section 56.29 were "remedial in nature" and "shall be applied retroactively to the full extent permitted by law."  *Id.* at § 18.

The legislature again amended the statute in 2016, renumbering certain subsections.  Ch. 2016–33, § 18, Laws of Fla.  In the 2016 amendment, the provisions of subsection (5) "were moved to subsection (9) and the legislature added an explicit requirement that such claims be brought by [supplemental] complaint."  *BAICO*, 607 B.R. at 758.  "To underscore that UFTA claims are distinct from proceedings supplementary," the 2016 amendment provided that "UFTA claims must be initiated by a supplemental complaint and served as provided by the rules of civil procedure."  Fla. S. Comm. on Judiciary, CS for SB 1042 (2016), Staff Analysis 4 (Jan. 12, 2016).

In *Uoweit*, this court held that "chapter 726 governs the timeliness of a UFTA claim brought under section 56.29(9)."  300 So. 3d at 1205.  We explained: "As amended in 2014 and 2016, the statute now specifically permits claims under chapter 726 in a proceeding supplementary.  But those claims are subject to chapter 726 and the rules of civil procedure."  *Id.*  Thus, we affirmed the circuit court's application of chapter 726's limitation period in dismissing a supplemental complaint to set aside purported fraudulent transfers of real property.  *Id.* at 1202, 1205.

Still, because *Uoweit* involved transfers of real property, we did not address whether a judgment creditor can bypass section 56.29(9) and

instead elect to pursue a money judgment under subsections (2), (3)(b), and (6) when the alleged fraudulent transfers involve personal property.

*BAICO* squarely confronted the issue of when section 56.29(2) may be used to commence a fraudulent transfer claim, explaining: "Other than the narrow category of claims that may be pursued under section 56.29(3)(b), a claim based in fraudulent transfer cannot be commenced through the issuance of a notice to appear." 607 B.R. at 758.

*BAICO* also addressed whether section 56.29(6) authorizes the entry of a money judgment based on a claim under subsection (3)(b), and concluded that it does not:

> In a related matter, [the judgment creditor] argued that Fla. Stat. § 56.29(6) authorizes this Court to enter a money judgment based on a claim under subsection (3)(b). This interpretation is contrary to the text of section 56.29 taken as a whole. . . . The relief authorized in subsection (6) is the relief that may be obtained from a proceeding relying on subsection (2). To further this relief, the court may enter "orders, judgments, or writs . . . including entry of money judgments . . . irrespective of whether such person has retained the property." Fla. Stat. § 56.29(6). In other words, the power to enter money judgments under subsection (6) is limited to claims aimed at recovery of property of the judgment debtor held by another and property payable to the judgment debtor. ***The power to enter money judgments under subsection (6) does not extend to relief sought under subsection (3)(b). To the contrary, subsection (3)(b) specifically limits the available relief to turnover of the fraudulently transferred personal property to the sheriff.*** This is consistent with the fact that subsection (3)(b) provides a narrow exception to the requirements of subsection (9) that fraudulent transfer claims be pursued by complaint, in which case money judgments may be obtained consistent with chapter 726.

*Id.* at 757 n.1. (emphasis supplied) (second and third ellipses in original).[3]

---

[3] We have reviewed an unpublished decision of a federal district court that disagreed with *BAICO*. *See Saadi v. Maroun*, No. 8:07-cv-1976-T-24 MAP, 2020 WL 774287, at *5 (M.D. Fla. Feb. 18, 2020). For the reasons set forth in this opinion, we conclude that *BAICO*'s statutory analysis is correct. By contrast, *Saadi* fails to fully grapple with the implications of section 56.29(9).

*D. Application of the Law in this Case*

Here, the trial court correctly ruled that the Plaintiffs' fraudulent transfer claims must be pursued under section 56.29(9) and are therefore subject to chapter 726's limitations periods. Section 56.29, taken as a whole, should not be read as allowing the Plaintiffs to pursue a money judgment under subsections (2), (3)(b), and (6)—independent of subsection (9)—simply because the alleged fraudulent transfers involve personal property.

First, subsection (2) requires the judgment creditor to describe either: (1) any property of the judgment debtor not exempt from execution in the hands of any person, or (2) any property, debt, or other obligation due to the judgment debtor which may be applied toward the satisfaction of the judgment. Here, the transferred funds are no longer in the hands of either Fowler White or Ritter Zaretsky. Nor do the funds constitute "any property, debt, or other obligation due to the judgment debtor."

Second, subsection (3)(b) does not allow for an award of money damages, but rather limits relief to voiding the transfer and directing the sheriff to take identifiable personal property to satisfy the execution. In this case, the Plaintiffs are not seeking an order directing the sheriff to take any *identifiable* personal property of the judgment debtor now in the hands of Fowler White or Ritter Zaretsky.

Third, section 56.29(6) does not authorize the entry of a money judgment based on a claim under subsection (3)(b). To be sure, section 56.29(6) allows the court to "enter any orders, judgments, or writs required to carry out the purpose of this section." The Plaintiffs contend that the phrase "this section" necessarily includes subsection (3)(b). However, the phrase "this section" necessarily includes subsection (9) as well. Subsections (3)(b) and (9) must be read together. Subsection (9) specifically requires UFTA claims brought under section 56.29 to be initiated by a supplemental complaint and to be subject to chapter 726's limitations periods. And subsection (3)(b) is properly read as "a narrow exception to the requirements of subsection (9) that fraudulent transfer claims be pursued by complaint[.]" *BAICO*, 607 B.R. at 757 n.1. It is well-established that a specific statutory provision "covering a particular subject matter is controlling over a general statutory provision covering the same and other subjects in general terms." *Adams v. Culver*, 111 So. 2d 665, 667 (Fla. 1959). Thus, the express language of subsections (3)(b) and (9) controls over the more general language of subsection (6).

*BAICO*'s statutory analysis is persuasive. Subsection (3)(b) is properly viewed as "a narrowly tailored substantive claim based in fraudulent transfer, independent of Florida's primary fraudulent transfer statute contained in chapter 726." *BAICO*, 607 B.R. at 757. But the legislature clearly limited relief under subsection (3)(b) to voiding the transfer and directing the sheriff to seize the property for execution. By contrast, section 56.29(9) permits money judgments for property no longer in the possession of the third-party transferee, but claims under this subsection are expressly subject to the UFTA's statute of repose. Because subsection (3)(b) clearly specifies the relief available, subsection (6) cannot be read as authorizing the court to enter a money judgment based on a claim under subsection (3)(b).

Fourth, the reference to money judgments in subsection (6) weighs against the Plaintiffs' interpretation of the statute. Subsection (6)'s reference to money judgments is as follows: "including entry of money judgments ***as provided in ss. 56.16-56.19*** . . . ." (Emphasis added). Sections 56.16-56.19 outline the process for third parties to claim ownership of property that the judgment creditor believes is subject to execution as property of the judgment debtor. This process is inapplicable to the facts of this case.

Finally, the Plaintiffs argue that the inclusion of chapter 726 in subsection (9) impliedly excludes chapter 726 from the other subsections of section 56.29. This argument may be correct, but it is beside the point. The point here is that the Plaintiffs' claims for a money judgment for the alleged fraudulent transfers of personal property could not be brought under subsections (3)(b) and (6) but instead had to be brought under subsection (9). As the trial court explained: "[T]here is no reason to allow fraudulent transfer claims for a money judgment under (3)(b) because they are already allowed by 56.29(9) and FUFTA, whether based on actual or constructive intent. In other words, the scope of section 56.29(9) is broad enough to encompass the types of claims Plaintiffs seek to bring here."

As the trial court reasoned, the Plaintiffs' interpretation of section 56.29 would "lead to an absurd result whereby section 56.29 would simultaneously provide for one cause of action for money judgments for fraudulent transfers subject to FUFTA's statute of repose (under 56.29(9)) and an identical cause of action for money judgments for fraudulent transfers that is not subject to FUFTA's statute of repose (under a combination of 56.29(2), 56.29(3), and 56.29(6))." (Emphasis omitted).

In sum, as the trial court ruled, because the Plaintiffs' fraudulent transfer claims were required to be pursued under section 56.29(9), the

Plaintiffs' claims were subject to section 726.110's statute of repose and were time barred.

### *The Plaintiffs Were Not Denied Due Process in this Case*

The Plaintiffs also argue that the trial court unconstitutionally denied them due process by retroactively applying the 2016 statutory amendment to hold their claims time barred. In other words, the Plaintiffs complain that the trial court "retroactively applied the 2016 amendment to [the Plaintiffs'] claims by stating they had to be brought under subsection (9), a subsection that did not exist until *after* the claims were expired."

We agree with the Appellees that the Plaintiffs were not denied due process when the trial court applied the 2016 version of section 56.29 to their claims, as the result would have been the same under either the 2014 or the 2016 version of the statute.

A new statute may not be retroactively applied to a cause of action that accrued previously. *Raphael v. Shecter*, 18 So. 3d 1152, 1157 (Fla. 4th DCA 2009). "Thus, retroactive abolition of substantive vested rights is prohibited by constitutional due process considerations." *Metro. Dade Cty. v. Chase Fed. Hous. Corp.*, 737 So. 2d 494, 503 (Fla. 1999).

"Although an amendment to a statute of limitations cannot extinguish an existing claim, it can, consistent with due process, shorten the limitation period applicable to the prior claim if the intent to make the amendment retroactive is clearly expressed, and if a reasonable time is allowed within which to seek enforcement of such claim." *Polk Cty. BOCC v. Special Disability Tr. Fund*, 791 So. 2d 581, 583 (Fla. 1st DCA 2001).

Here, the Plaintiffs were not denied due process when the trial court applied the 2016 version of section 56.29 to their claims, as the result would have been the same under the 2014 version of the statute. The critical language—that the trial court may entertain claims under chapter 726 in proceedings supplementary and that such claims "are subject to the provisions of Chapter 726"—is the same in both the 2014 and the 2016 versions of section 56.29. *Compare* § 56.29(5), Fla. Stat. (2014), *with* § 56.29(9), Fla. Stat. (2016).

Just as with the 2016 version of section 56.29, the proper interpretation of the 2014 version is that a judgment creditor cannot elect to bring a fraudulent transfer claim seeking the remedy of a money judgment (as opposed to seeking the remedy of an order directing the sheriff to take personal property to satisfy the execution) without such

claim being subject to the chapter 726 limitations periods. While the 2016 amendment renumbered certain subsections and clarified in the new subsection (9) that UFTA claims in proceedings supplementary are to be initiated by a supplemental complaint, this was not a substantive change in the law.

The bottom line is that the 2014 amendment, rather than the 2016 amendment, first incorporated the limitations periods from chapter 726. The legislature clearly expressed its intent to make the 2014 amendment retroactive. And the Plaintiffs still had a reasonable time to bring their claims, as they did not obtain evidence of the transfers at issue until June 23, 2015, and thus could have brought their claims until June 23, 2016.

### Conclusion

For the foregoing reasons, we affirm the summary judgments in favor of Fowler White and Ritter Zaretsky.

*Affirmed.*

FORST and KUNTZ, JJ., concur.

\*　　　\*　　　\*

***Not final until disposition of timely filed motion for rehearing.***

15